OXNARD BEET SUGAR COMPANY V. STATE OF NEBRASKA.*

FILED JANUARY 5, 1905.  No. 13,995.

1. **Constitutional Law.**  *Held,* That chapter 1, laws of 1895, entitled "An act to provide for the encouragement of the manufacture of sugar and chicory and to provide a compensation therefor," is in contravention of section 11, article III of the constitution, which provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title."

* Rehearing denied.  See opinion, p. **66,** *post.*

2. ———: OBLIGATION OF CONTRACT. A moral obligation can never be deemed to rest upon the people of the state to discharge a contract made by the legislature in direct violation of the constitution.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Charles F. Manderson, James E. Kelby, Frank H. Gaines* and *Edward R. Duffie,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown, contra.*

OLDHAM, C.

The plaintiff below, who is also plaintiff in error in this court, is the manufacturer of sugar from beets grown within this state. Its claim against the state is based on the provisions of chapter I, laws of 1895, entitled "An act to provide for the encouragement of the manufacture of sugar and chicory and to provide a compensation therefor," passed March 29, 1895, by a constitutional majority, over the governor's veto. Having complied with all the provisions of this act, it presented its claims for bounty to the auditor of the state, which were audited and approved, and warrants drawn for the various amounts due plaintiff under this act. In the case of *State v. Moore,* 50 Neb. 88, it was held by this court that claims for bounty could not be paid without a specific appropriation for such purpose. In this opinion, however, the validity of the claims was not considered. Plaintiff in error presented its claims to the legislature at its session in 1903, asking that an appropriation be made for their payment. The house of representatives on April 2, 1903, passed a resolution reciting, among other things, the presentation of these claims for payment, and that "the validity of each of said claims, or the right to payment thereof, is questioned," and authorizing the plaintiff in error to prosecute an action against the state in the district court for Lan-

caster county for the purpose of ascertaining and determining said claims and the liability of the state for the payment thereof. After the passage of this resolution, plaintiff filed its petition in the district court for Lancaster county, setting forth in detail its compliance with all the provisions of chapter 1, laws of 1895, the filing of its claims with the auditor, the approval of the claims and the drawing of the warrants, countersigned by the treasurer, and also alleging, by way of inducement, that plaintiff had engaged in the manufacture of sugar, relying on the provisions of this act, and had paid the minimum of $5 a ton, required by the act, for beets raised in the state, from which sugar was manufactured, when it could have procured such beets for the sum of $4 a ton. To this petition the state interposed a demurrer, for the reason that chapter 1, laws of 1895, is unconstitutional and in contravention of section 11, article III, of the constitution of the state of Nebraska, in that it embraces two separate and distinct subjects in one act; and also because the object of such act was not a public object, nor such an object as the legislature of the state had power to aid by the appropriation of the public revenue, or the promise of such appropriation. This demurrer was sustained by the trial court, and plaintiff electing to stand on its petition, judgment was entered dismissing the petition; and from this judgment plaintiff has taken error to this court.

The only objection to the constitutionality of the act in controversy which it will be necessary to examine is that it is in contravention of so much of section 11, article III of the constitution, as provides that "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." In considering this constitutional restriction upon legislative power, it is well to remember that this court has followed the trend of the best considered cases in other states, and held it mandatory and not directory in its nature. Referring to this provision of the constitution we said in the case of *Kansas City & O. R. Co. v. Frey,* 30 Neb. 790:

"The object of the framers of the constitution was not to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus greatly multiply their number, but it was intended that a proposed measure should stand upon its own merits, and that the several members of the legislature should be apprised of the purpose of the act when called upon to support or oppose it; in other words, members were prohibited from joining two or more bills together in order that the friends of the several bills may combine and pass them."

Again in the case of *Trumble v. Trumble*, 37 Neb. 340, IRVINE, C., in an able and exhaustive opinion in which the former decisions of this court were considered, said:

"Is this act within the inhibition of that clause of the constitution providing that no bill shall contain more than one subject? This question is in most cases surrounded with difficulty. As was said in *Kansas City & O. R. Co. v. Frey*, 30 Neb. 790, this clause of the constitution 'was never designed to place the legislature in a strait jacket and prevent it from passing laws having but one object under an appropriate title.' Provided the object of the law be single the whole law may be embraced in a single enactment, although it may require any number of details to accomplish the object. The purpose of the constitutional inhibition upon the other hand was to require each proposed measure to stand upon its own merits, and to apprise the members of the legislature of the purpose of the act when called upon to support or oppose it, and perhaps a still stronger purpose was to prohibit the joining of several measures in one act in order to combine the friends of each measure and pass the bill as a whole, where probably a majority could not be procured in favor of any one of its different objects."

On the other hand, in the case of *Hopkins v. Scott*, 38 Neb. 661, in discussing the validity of chapter 50, laws of 1891, relating to the keeping of state and county funds, we said:

"It is urged that the act of 1891 is unconstitutional, as

Oxnard Beet Sugar Co. v. State.

containing more than one subject. The act provided both for the depositing of state funds and for the depositing of county funds and it is contended that each of these forms a separate subject of legislation. The general object of the act is to provide for the safe custody of public funds, and it seems to us that this is a single subject of legislation, whether the funds are state or county. The object of the act is plainly expressed in its title, and the combination of provisions in regard to both state and county funds presents none of those objections which influenced the adoption of the constitutional inhibition against uniting two or more subjects in a single act."

In *Van Horn v. State,* 46 Neb. 62, in which the validity of chapter 32, laws of 1895, providing for township organization, had been assailed as containing more than one subject, it was said:

"It has always been said that the legislature might choose for itself its manner of legislation, and that an act, no matter how comprehensive, would be valid providing a single main purpose was held in view, and nothing embraced in the act except what was naturally connected with and incidental to that purpose. Thus, in *State v. Page,* 12 Neb. 386, the act of 1879, already referred to, entitled 'An act concerning counties and county officers,' was held to contain but one subject because it had 'but one general object' fairly expressed in the title, although this act contained a complete scheme of county government, and so operated as to materially change the law on other subjects related thereto."

Also in the recent case of *Wenham v. State,* 65 Neb. 394, we held that "An act to regulate and limit the hours of employment of females in manufacturing, mechanical and mercantile establishments, hotels and restaurants; to provide for its enforcement and a penalty for its violation," was not obnoxious to the objection that it contained more than one subject.

We do not think that there is any serious conflict in these decisions. The rule established is that, if the title

fairly expresses a general purpose, then all matters fairly and reasonably connected therewith, and all measures which facilitate its accomplishment, constitute but a single subject. *City of Grand Rapids v. Burlingame,* 93 Mich. 469, 53 N. W. 620. For instance, in *Hopkins v. Scott, supra,* the general purpose of the act, as set forth in the excerpt quoted from the opinion, is to provide for the safe keeping of public funds, and state and county funds being each a specie of this genus are included within the title. In *Van Horn v. State, supra,* the object of the act was to provide a system of local government by township organization; consequently, all the means by which this object was to be accomplished were properly connected with this title. In *Wenham v. State, supra,* the act construed was a police regulation for the protection of female employees and the different places of employment named in the title were closely and logically connected with the subject of the act, and the penalties prescribed were but the means by which the act was made effective.

Now the question is, does chapter 1, laws of 1895, present two separate and distinct subjects for the bounty of the state, or does it contain a comprehensive generic title to which both objects of the bounty are germane? It will be noticed that the title of the act is "An act to provide for the encouragement of the manufacture of sugar and chicory and to provide a compensation therefor." The first section provides: "That there shall be paid out of the state treasury to any person, firm or corporation engaged in the manufacture of sugar in this state from beets, sorghum or other sugar yielding canes or plants grown in Nebraska, the sum," etc. The second, third and fourth sections of the act are all germane to the title of the manufacture of sugar, and provide the means and conditions under which the bounty shall be paid. The fifth section of the act provides: "That there shall be paid out of the state treasury to any person, firm, or corporation engaged in the manufacture of chicory in the state from chicory beets or plants grown in Nebraska, the sum," etc.

The sixth and seventh sections are germane to the manufacture of chicory, and provide the means of carrying the act into effect. Sections eight and nine of the act apply to both sugar and chicory.

It is said in the brief of the able counsel for plaintiff in error that the subject matter before the legislature was "to encourage the production of sugar and chicory from certain agricultural products, and as a result to provide a remunerative and stable market for our farming population for such products." In our judgment, if this was the object of the legislation, such object is not fairly expressed by the title of the act. For the title refers to the encouragement of the manufacture of sugar and chicory, and the body of the act provides that they shall be manufactured from plants or beets grown in the state. While we regard the question of the policy of the act as one for legislative rather than judicial determination, yet we cannot but be impressed from both the language of the act and from the manner of its passage that it contains two separate and distinct subjects, and aims at two distinct objects. If the act had provided for encouraging the manufacture of beets grown in this state into sugar or chicory, we would be inclined to say that the act contained but a single subject, which was the manufacturing of beets into sugar and that both the chicory and sugar beet could be fairly embraced within the title. But this is neither the subject nor the condition of the act. It attempts to provide a bounty for sugar manufactured either from beets, sugar cane, or any other sugar producing plant raised in the state, and in the same act to provide a bounty for chicory either from chicory beets or from plants raised in the state. There is no such close relation between the manufacture of sugar and the manufacture of chicory as to say that provisions for the encouragement of the manufacture of the one are the means by which the encouragement of the other is logically accomplished. While there is always a remote connection between the manufacture of articles consumed as food stuffs and beverages, yet there

is not such an inseparable relation as to make the one dependent upon the other. The use of sugar as a food product is so universal in all conditions of life that it is regarded as a primary necessity. On the other hand, chicory is a plant cultivated in various parts of Europe and the United States, at first, for the medicinal properties contained in its roots, which contain many similar qualities to the roots of the dandelion. Later, its production has been encouraged for the purpose of its use as a beverage as a substitute for or in a mixture with coffee. The process of manufacturing chicory is by roasting its roots in iron cylinders, which are kept revolving as in the roasting of coffee. While it might be said that the manufacture of chicory and its use as a beverage tend to increase the demand for sugar, yet the same could be said of another beverage in common use, which can be manufactured by distillation from corn or rye raised within the state of Nebraska. But, as a matter of fact, the use of sugar with either of these beverages, while frequently indulged in, is not essential to their full enjoyment. Now, it seems to us that the purpose of the inhibition of section 11, article III of the constitution, being to require every enactment to stand or fall on its own merits or want of merit, and to prevent omnibus legislation, is aimed directly at just such measures as this. When the act in controversy was introduced in the house it only provided for encouraging the manufacture of sugar, and in this form it passed the house; when it went to the senate it was amended by adding sections 5, 6 and 7, which provided for the encouragement of the manufacture of chicory. While the senate amendment was subsequently passed by the house, and while the measure as amended passed both bodies later, over the veto of the governor, we cannot escape the conclusion that the friends of the manufacture of each of these different products were gathered together for a common fight for the bill in this omnibus form, when, perhaps, a provision for the encouragement of either standing on its own merits might have failed of

passage. *People v. Denahy,* 20 Mich. 349; *State v. Harri-son,* 11 La. Ann. 722; *Skinner v. Wilhelm,* 63 Mich. 568, 30 N. W. 311; *In re House Bill* 168, 21 Colo. 46, 39 Pac. 1096.

But it is urged by counsel for plaintiff that, even if the statute under which its claims are made is unconstitutional for any reason, there is still a moral and equitable duty resting upon the legislature to pay the bounty, and this contention seems to receive some support in the language used by Peckham, J., in the case of *United States v. Realty Co.,* 163 U. S. 427. While recognizing the high standard of the tribunal from which the decision comes, as well as the great learning of the author of the opinion, we are still unable to give our assent to this doctrine. We are unable to understand any principle either of equity or good conscience that should estop the people of the state of Nebraska by an unauthorized act of the legislative department of their government, especially when such act is attempted to be enforced in the face of a direct prohibition in the constitution or basic law adopted by the people. An unconstitutional statute is a legal still-birth, which neither moves, nor breathes, nor holds out any sign of life. It is a form without one vital spark; it is wholly dead from the moment of its conception, and no right either legal or equitable arises from such an inanimate thing. In discussing *United States v. Realty Co., supra,* and the principle it is cited to support, it was said by the supreme court of Minnesota in the case of *Minnesota Sugar Co. v. Iverson,* 91 Minn. 30, 97 N. W. 454: "The claim is made that the state is under a moral obligation to pay this bounty, and reliance is placed upon *United States v. Realty Co.,* 163 U. S. 427, 41 L. ed. 215, 16 Sup. Ct. Rep. 1120. There the court declined to pass upon the question whether the original legislation—the congressional bounty act—was constitutional, but assumed, for the purposes of the decision, that it was not. The case has been very severely criticised, and we are unable to find any other in which it has been held that the unconstitu-

8

tional act of a legislative body is any justification in law for any action or non-action."

We are therefore of opinion that the learned trial court was right in sustaining the demurrer to plaintiff's petition, and we recommend that the judgment be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed November 11, 1905. *Rehearing denied:*

1. **Legislative Powers.** The legislature cannot appropriate or pledge the public money for private purposes.

2. **Constitutional Law.** Chapter 1 of the laws of 1895, entitled "An act to provide for the encouragement of the manufacture of sugar and chicory and to provide a compensation therefor," is unconstitutional and void.

3. **Bounties: OBLIGATION OF STATE.** The statute offering a bounty for the manufacture of sugar and chicory being unconstitutional because of lack of power on the part of the legislature to appropriate money for such purpose, the fact that the manufacturers paid larger prices for their products to the producers of beets from which to manufacture these articles, relying upon this statute for remuneration, will not create in favor of such manufacturers any obligation against the state.

SEDGWICK, J.

Because of doubts as to the correctness of the opinion in this case *ante,* p. 57, oral argument was heard upon the motion for rehearing, and new and exhaustive briefs have been filed. Upon the constitutional point mainly discussed in the opinion we are inclined to think that we were wrong. It was said in that opinion:

"The rule established is that, if the title fairly expresses a general purpose then all matters fairly and reasonably connected therewith, and all measures which

facilitate its accomplishment constitute but a single subject."

The title of the act in question is "An act to provide for the encouragement of the manufacture of sugar and chicory and to provide a compensation therefor." It is not accurately quoted in the former opinion. This court has generally held to the rule that no act of the legislature will be held unconstitutional unless it is manifestly so. All doubts will be resolved in favor of the constitutionality of an act of the legislature. We think that, under the rule above quoted from the former opinion, it is not so clear that two subjects are involved in the statute within the meaning of the constitutional provision as to require us to hold the act unconstitutional for that reason. The manifest object of the legislature in encouraging the manufacture of sugar and chicory was, as stated in the brief of counsel, "to build up manufacturing industries in the state which would help to develop our natural resources," and so diversify "our pursuits, as well as our products." We think that the legislators must have understood from this title that this was the purpose of the legislation. The former holding upon this subject, then, was wrong.

2. Another question presented is as to the power of the legislature to appropriate the public money for such purposes. It is the province of the legislature to determine matters of policy. In appropriating the public funds, if there is reason for doubt or argument as to whether the purpose for which the appropriation is made is a public or a private purpose, and reasonable men might differ in regard to it, it is generally held that the matter is for the legislature; and to our minds this is the only reasonable conclusion. We have had much difficulty with the question presented here. We have, however, been aided by the discussion of the courts of some of our sister states upon this precise question. In Michigan, under a constitutional provision similar to ours, the legislature attempted to appropriate the public money to encourage the production

of sugar, and the supreme court of that state upon thorough investigation and careful reasoning determined that the purpose of the appropriation was not a public one, and held the legislation unconstitutional. *Michigan Sugar Co. v. Auditor General*, 124 Mich. 674, 83 N. W. 625. Following this decision the supreme court of Minnesota, in *Minnesota Sugar Co. v. Iverson*, 91 Minn. 30, 97 N. W. 454, held similar legislation unconstitutional for the same reason. The circuit court of appeals of the United States for the eighth circuit has announced the same conclusion. In *Dodge v. Mission Township*, 107 Fed. 827, Judge Sanborn, speaking for the court, gives strong reasons for concluding that the encouragement of the manufacture of sugar is not a public purpose for which the legislature may appropriate the public money, and concludes that such legislation is unconstitutional. The legislature cannot appropriate the public moneys of the state to encourage private enterprises. The manufacturing of sugar and chicory is a private enterprise, and the public money or credit cannot be given or loaned in aid of any individual, association or corporation carrying on such enterprises. Const., art. XII, sec. 3.

3. It is contended in the brief that, though the statute be held unconstitutional, still there is a moral obligation resting upon the state to pay the claim. The argument is that the purpose of the legislature was to pay to the farmers who raised the beets a bounty, and that the sugar company was only the intermediary for so doing, and relying upon this legislation, the sugar company paid thousands of dollars to the farmers, supposing that the state had requested them to do so upon the agreement of the state to repay the sugar company. This it is claimed raises a moral obligation on the part of the state to repay the company. This argument would be very forcible if the company had paid to the farmers money which the state could be either legally or morally obligated to pay them. But, since it was unlawful for the state to pay this money to the farmers, and the state was not and could not be

under any obligation, legally or morally, to do so, the sugar company could not place the state under obligation to it by making such payments to the farmers. It seems to us that the reasoning in *United States v. Realty Co.,* 163 U. S. 427, 16 Sup. Ct. Rep. 1120, 41 L. ed. 215, which is a case much relied upon, is not satisfactory and conclusive upon this point. Other courts have refused to follow it, as appears from the cases above cited.

It follows that the conclusion formerly reached is right, and the motion for rehearing is

OVERRULED.