ARTHUR J. WEAVER, GOVERNOR, APPELLANT, V. WILLIAM KOEHN ET AL., APPELLEES.

FILED JULY 9, 1930. No. 27424.

*C. A. Sorensen, Attorney General,* and *George W. Ayers,* for appellant.

*Peterson & Devoe, amici curiæ.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY, and DAY, JJ.

DEAN, J.

Under the provisions of chapter 33, Laws 1929, the legislature appropriated $260,111.34, or so much thereof as should be necessary, to repay depositors in failed banks for such of their money as was deposited by them therein while the banks were closed and were being operated by the guaranty fund commission.

The Honorable Arthur J. Weaver, governor, and *ex officio* head of the department of trade and commerce, authorized the beginning of this suit to obtain a judicial determination, or a declaratory judgment, stating whether the legislative appropriation herein named is valid, and to obtain a judicial determination in respect of certain questions arising out of the proposed distribution of the money to the depositors.

The defendants William Koehn, Charles Behrendt, trustee, and A. H. Sissakian were depositors in one or more of the state banks during the time the banks were being operated by the commission and, as such depositors, they were made parties defendant. Each of the defendants filed a waiver of service of summons and entered a voluntary appearance in the suit and all joined in the prayer of plaintiff's petition herein that, upon a hearing being had, a declaratory judgment should be rendered by the court in respect of the validity of the appropriation by the legislature to reimburse depositors. The following allegation, in behalf of other of the depositors, also appears in plaintiff's petition, namely:

"There also are several thousands of other persons who have or claim to have some right as depositors to be reimbursed out of the money so appropriated. Some of them are unknown to the plaintiff and their number is so great

that it is not practical to get personal service upon them all, but the rights of each and all of them are affected as are the rights of the defendants herein specifically named by the answers to questions herein set forth."

The evidence was submitted and the suit was argued in the district court for Lancaster county before three district judges, namely, the Honorables Shepherd, Broady, and Chappell, sitting *en banc,* and the court, so organized, found, adjudged and decreed that the above named appropriation of $260,111.34, for the reimbursement of depositors in failed banks, was and is an unconstitutional proceeding and is therefore void and of no effect. The following reasons in support of their conclusion appear in the judgment rendered by the above named court, in respect of the invalidity of the appropriation in suit, namely:

"First, because it is offensive to the due process provision of the Constitution, and not for a public purpose; secondly, because the title to the act is insufficient to disclose the nature, purpose, and effect of said appropriation, and of the legislation resulting therein; and, thirdly, because said appropriation involves the taking of the property of the public generally for the relief of private persons without obligation on the part of the state, either legal or moral."

From the judgment so rendered, the plaintiff has appealed.

Chapter 33, Laws 1929, so far as applicable here, follows:

"There is hereby appropriated out of any money in the state treasury not otherwise appropriated the sum of $260,-111.34, or so much thereof as may be necessary, to refund to depositors in banks closed by the department of trade and commerce such part of their deposits as was deposited in any of said banks by any of said depositors after said banks were closed and while operated by and in charge of the guaranty fund commission. The department of trade and commerce shall ascertain and determine which depositors are entitled to payment under this section and the amount to be paid to each of said depositors, said amount

being the amount of the claim as allowed by the district court against the guaranty fund less any payments made on said claim from any source. The auditor of public accounts is hereby authorized and directed to draw warrants on the state treasury for the amounts so determined upon the presentation of proper vouchers approved by the department of trade and commerce and the state treasurer shall pay the same out of moneys in the general fund not otherwise appropriated."

The judgment is clearly for affirmance. The banking business, as it relates to state banks in Nebraska, is recognized as being quasi-public in its transactions with the people generally, and particularly in respect of its transactions with depositors of money in such state banks. And this, of course, includes individuals and corporations and, in effect, all depositors of money therein. But the appropriation of money by the state, to reimburse depositors for losses sustained by them in failed banks, clearly appears to be the taking of money belonging to one class to pay the claims of those of another class. And this is in violation of the due process provision of the federal and state Constitutions. Clearly it has not yet come to pass that the state, in its supervision of the banking business, has become an eleemosynary institution.

In view of the facts as presented, it clearly appears to us that the losses of individual depositors in state banks cannot lawfully be made up nor paid from the appropriation of money that belongs to all of the people of the state. The deposits herein were merely business transactions between the bank and the depositor, and the public should not be made to pay for the losses that a depositor may have suffered in such transactions.

In *State v. Cornell*, 53 Neb. 556, it is said: "It is for the legislature in the first instance to decide what is and what is not a public purpose, but its determination of the question is not conclusive upon the courts." And in *Abie State Bank v. Weaver*, 119 Neb. 153, this language was used: "It is elementary that it is not within the province of the courts to annul a legislative act unless its provisions so

clearly contravene a provision of the fundamental law, or it is so clearly against public policy, that no other resort remains." In Gray, Limitations of Taxing Power, 123, sec. 170, the author says: "The state exists for the benefit of all; any devotion of its powers to merely private ends is such a perversion of its purpose and duties as to be utterly void; and it is the duty of the judicial agents of the state to protect the community from such perversion."

The title to chapter 33, Laws 1929, hereinbefore mentioned, follows:

"An act to make appropriations for the payment of claims filed against the state of Nebraska in the office of the auditor of public accounts, not heretofore paid, and for which no appropriation has been made; to make appropriations for the payment of miscellaneous claims presented to the legislature for which no appropriations have heretofore been made; to provide the manner in which certain money so appropriated shall be paid and expended and to declare an emergency."

We conclude that the title to the act, as above set forth, is insufficient to disclose the nature, purpose, and effect of the appropriation referred to in the body of the act, and is so clearly general in expression that it fails to apprise the reader of the nature of the appropriations to which reference is therein made.

The judgment of the learned trial judges is in all things

AFFIRMED.