DANIEL HENRY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFF, V. DAWN E. ROCKEY, TREASURER OF THE STATE OF NEBRASKA, ET AL., DEFENDANTS.

518 N.W.2d 658

Filed July 15, 1994.    No. S-93-828.

Paula B. Hutchinson and, on brief, David Edward Cygan, for plaintiff.

Don Stenberg, Attorney General, and Lisa D. Martin-Price for defendants.

John W. DeCamp, of DeCamp Legal Services, P.C., for amicus curiae Commonwealth State Securities American Savings Litigation Committee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., HANNON, Judge, and BLUE, District Judge.

PER CURIAM.

This is an original class action wherein Daniel Henry, a Nebraska resident taxpayer, challenges the constitutionality of 1993 Neb. Laws, L.B. 657. In that law, the Legislature appropriated a total of $16.5 million over 4 bienniums to reimburse depositors of the failed Commonwealth Savings Company, State Security Savings Company, and American Savings Company (hereinafter, collectively, Commonwealth creditors).

We find L.B. 657 to be unconstitutional special legislation in violation of Neb. Const. art. III, § 18.

## FACTS

The following facts have been stipulated by the parties:

On November 1, 1983, the Nebraska Department of Banking and Finance closed Commonwealth Savings Company and placed it in receivership. The district court for Lancaster County appointed the Department of Banking and Finance as receiver. Two other industrial loan and investment companies,

State Security Savings Company and American Savings Company, have sought protection under the Bankruptcy Code but have not been placed into receivership as of the date of a stipulation of facts filed by the parties in this case.

Deposits in the three failed industrial loan companies were insured by the Nebraska Depository Institution Guaranty Corporation (NDIGC), created pursuant to the Nebraska Depository Institution Guaranty Act, Neb. Rev. Stat. § 21-17,127 et seq. (Reissue 1991). This act has not been repealed.

On January 4, 1985, the NDIGC surrendered all of its assets to the Commonwealth receiver, and thereafter had no assets to fulfill its guarantees of deposits. Various types of claims and lawsuits then ensued on behalf of the Commonwealth creditors. Eventually, a compromise amount of $8.5 million was approved for payment of a tort claim of the Commonwealth creditors against the State, and the Legislature appropriated that amount for payment to the Commonwealth receivership. The amount was paid in September 1985.

In return for the payment, both the district court for Lancaster County and the Legislature required the Commonwealth receiver to execute a release of "any and all claims and causes of action on behalf of the receivership and Commonwealth's depositors and creditors which they might have to that point against the State or the State's officers and employees arising out of the Commonwealth collapse, the regulation of Commonwealth and the NDIGC."

In 1990, the Legislature appropriated an additional $33.8 million for Commonwealth depositors. That appropriation was declared unconstitutional. See *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991).

On January 25, 1991, the Commonwealth creditors filed a claim with the Office of Risk Management under Nebraska's State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1987 & Cum. Supp. 1990). On August 13, 1992, the claimants filed a letter requesting that the previously filed tort claim in the amount of $100,902,500 be converted into a miscellaneous claim, which then became claim No. 91-310, under the State Miscellaneous Claims Act, Neb. Rev. Stat.

§ 81-8,294 et seq. (Cum. Supp. 1992).

On November 16, 1992, the State Claims Board approved the claim in the amount of $16.5 million and forwarded its decision to the Legislature for review and appropriation of funds. The Ninety-third Legislature, First Session, enacted L.B. 657 for payment of miscellaneous items of indebtedness in claim No. 91-310. L.B. 657 appropriated (1) $11,100 from the General Fund for "FY1993-94," (2) $11,100 from the General Fund for "FY1994-95," and (3) an additional $16,477,800 from the General Fund, to be disbursed in equal amounts over the following 3 bienniums if the act is challenged in court and upheld as constitutional. L.B. 657 was approved by the Governor on June 7, 1993, and had an operative date of July 1.

On August 23, 1993, Daniel Henry, individually and on behalf of all others similarly situated, filed in this court an "Application for Leave to Commence an Original Action" pursuant to Neb. Const. art. V, § 2. Plaintiff's application was sustained on September 22. Upon application of plaintiff, this court issued a temporary restraining order on October 7 prohibiting the disbursement of funds appropriated pursuant to L.B. 657 until further order of the court.

In his "Original Verified Petition for Declaratory and Injunctive Relief," plaintiff challenges the constitutionality of L.B. 657, requests permanent injunctive relief, and requests an award of attorney fees and costs. Dawn E. Rockey, Treasurer of the State of Nebraska; Lawrence S. Primeau, director of the Department of Administrative Services of the State of Nebraska; and James A. Hansen, director of the Department of Banking and Finance of the State of Nebraska, were named as defendants in their official capacities.

The Commonwealth State Securities American Savings Litigation Committee also filed a brief as amicus curiae in support of defendants.

## ISSUES PRESENTED

The issues defined by plaintiff's petition in this original action are whether L.B. 657 is (1) special legislation in violation of article III, § 18, of the Nebraska Constitution; (2) an appropriation in excess of the biennium in violation of article

III, § 22, of the Nebraska Constitution; and (3) an unconstitutional delegation of legislative authority to the judiciary.

## STANDARD OF REVIEW

The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. 299, 512 N.W.2d 642 (1994). The unconstitutionality of a statute must be clearly demonstrated before a court can declare the statute unconstitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *In re Applications A-16027 et al.*, 242 Neb. 315, 495 N.W.2d 23 (1993).

## ANALYSIS

### SPECIAL LEGISLATION

Plaintiff contends that L.B. 657 represents the Legislature's attempt to circumvent this court's decision in *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991), and to do indirectly what it could not do directly, as indicated by the legislative history of the bill. Plaintiff argues that L.B. 657 is special legislation both because it creates a totally arbitrary and unreasonable method of classification and because it was enacted for the benefit of a closed class, the Commonwealth creditors being a class permanently closed to future members. Plaintiff claims that the taking of money from one class to pay the claims of another class is a violation of the due process and equal protection rights guaranteed by the federal and state Constitutions.

Defendants seek to distinguish the present case from *Haman* by arguing that L.B. 657 is not a substantive bill, but merely an appropriations bill enacted to pay claim No. 91-310 pursuant to the State Miscellaneous Claims Act, § 81-8,294 et seq. Therefore, they reason, L.B. 657 cannot constitute special legislation. Defendants urge that it is the State Miscellaneous Claims Act which the court must find to be unconstitutional special legislation before the court can find L.B. 657 to be unconstitutional. Thus, our first inquiry must be whether L.B. 657 may constitute special legislation.

We note that 1990 Neb. Laws, L.B. 272A, which this court

found unconstitutional in *Haman*, was also an appropriations bill. Defendants cite no authority for the proposition that an appropriations bill cannot constitute special legislation, nor has our research revealed any such authority. In fact, the express language of the State Miscellaneous Claims Act, as applied to L.B. 657, indicates otherwise.

The appropriation of funds by L.B. 657 is governed by the terms of the State Miscellaneous Claims Act. Section 81-8,300 gives the State Claims Board the authority to approve claims. However, § 81-8,300 requires that claims in excess of $10,000 *"shall be reviewed* by the Legislature and an appropriation made therefor *if appropriate."* (Emphasis supplied.)

At least as to claims approved by the State Claims Board in excess of $10,000, the Legislature has two affirmative duties: (1) to review the claim and (2) to make an appropriation for the claim if appropriate. The language of § 81-8,300 is mandatory as to these duties. Because claim No. 91-310 was for an amount in excess of $10,000, it was mandatory for the Legislature to review the claim and determine whether an appropriation to pay the claim was appropriate. That being so, L.B. 657 represents more than the Legislature's rubberstamp of the State Claims Board's recommendation to pay claim No. 91-310.

Obviously, the passage of L.B. 657 indicates that the Ninety-third Legislature was in substantive agreement with the decision of the State Claims Board, i.e., the Legislature reviewed claim No. 91-310 and found payment of the claim to be appropriate. That the Legislature did exactly that is confirmed by L.B. 657, § 1, which states that "[t]he Legislature . . . finds that further reimbursement of the depositors' financial losses *is warranted."* (Emphasis supplied.)

For the above reasons, we disagree with defendants that L.B. 657 cannot be considered to be special legislation because it is not substantive. Any attempt to distinguish this case from *Haman* on that basis must fail.

L.B. 657 seeks to authorize payments to the same group of people as did L.B. 272A, that is, the depositors of the Commonwealth Savings Company, State Security Savings Company, and American Savings Company. Thus, to determine whether L.B. 657 is special legislation in violation of

Neb. Const. art. III, § 18, we need look no further than our holding in *Haman*.

A legislative act violates Neb. Const. art. III, § 18, as special legislation in one of two ways: (1) by creating a totally arbitrary and unreasonable method of classification or (2) by creating a permanently closed class. *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991). The test for statutes challenged under the special-laws prohibitions is that they must bear a reasonable and substantial relation to the object sought to be accomplished by the legislation. *Id.*

In *Haman*, defendants argued that although the State had no legal obligation to reimburse the Commonwealth creditors, it had a moral obligation to do so. In that case, we stated that

> a moral obligation attaches when there is "a law [which] is passed notifying and warning the taxpayer and the citizen generally that the state . . . will undertake the burden of such damages." Nowhere in the NDIGC legislation was such a notification or warning present. In fact, the NDIGC act provides that "[n]o state funds of any kind shall be allocated or paid to the corporation." Neb. Rev. Stat. § 21-17,135(4) (Reissue 1987).

*Haman v. Marsh*, 237 Neb. at 714, 467 N.W.2d at 847.

We concluded that the State had no moral obligation to pay the claims of the Commonwealth creditors, and for that reason, it was not necessary for us to reach the question of whether moral obligation would provide reasonable and substantial support for the classification in question. We then held that L.B. 272A, authorizing payments from the state treasury to Commonwealth creditors, created a totally arbitrary and unreasonable method of classification and also created a permanently closed class, and thus was special legislation under both prongs of the test.

In this case, defendants argue that an award pursuant to the Miscellaneous Claims Act is an *equitable* remedy which permits the Legislature to consider any valid claim against the State which cannot be pursued elsewhere. Defendants state that the Legislature has the "broad equitable jurisdiction" to do this, brief for defendants at 28, analogous to the equitable jurisdiction of the courts. Again, defendants cite no authority

for this novel proposition. Assuming arguendo that the Legislature does possess some broad equitable power analogous to that of the judicial branch, we remind defendants of the maxim that "equity follows the law." See *Miller v. School Dist. No. 69*, 208 Neb. 290, 296, 303 N.W.2d 483, 488 (1981).

The powers of the Nebraska Legislature are legally derived from Neb. Const. art. III. The Legislature is specifically empowered to make appropriations for the expenses of the government. See Neb. Const. art. III, § 22. However, the Legislature is not vested with unlimited power to make appropriations. "The purpose . . . of an appropriation bill is to make provision for *lawfully* taking money out of the state treasury . . . ." (Emphasis supplied.) *Rein v. Johnson*, 149 Neb. 67, 78, 30 N.W.2d 548, 556 (1947), *cert. denied* 335 U.S. 814, 69 S. Ct. 31, 93 L. Ed. 369 (1948).

The Legislature is empowered to make appropriations to meet the legal obligations of the state. See, *Haman v. Marsh, supra*; *Weaver v. Koehn*, 120 Neb. 114, 231 N.W.2d 703 (1930). The Legislature is *not* empowered to make appropriations for purely charitable purposes. See *Weaver v. Koehn, supra*.

Nowhere in their brief do defendants contend that the Legislature has a legal duty to reimburse the Commonwealth creditors for their losses. In fact, defendants concede that no legal remedies are available to reimburse the Commonwealth creditors. Therefore, the Legislature's right to appropriate state funds for that purpose must be grounded, if at all, in moral obligation.

As previously noted, this court has already determined in *Haman* that the State has no moral obligation to reimburse the Commonwealth creditors. Thus, even if a moral obligation would provide a reasonable and substantial support for the classification in question, a matter we do not decide, we can only conclude that the Legislature's enactment of L.B. 657 constitutes an act of charity on the part of the State toward the Commonwealth creditors.

Once again we declare, as we have for more than 60 years, that " '[c]*learly it has not yet come to pass that the state, in its supervision of the banking business, has become an eleemosynary institution.*' " (Emphasis supplied.) *Haman v.*

*Marsh*, 237 Neb. at 715, 467 N.W.2d at 848. Accord *Weaver v. Koehn, supra. The purse strings of this state are not open for the purpose of simply giving money away.*

We now hold, adhering to our analysis in *Haman*, that L.B. 657's authorizing payments from the state treasury to the Commonwealth creditors creates an arbitrary and unreasonable method of classification, that it creates a permanently closed class, and that it is therefore unconstitutional special legislation in violation of Neb. Const. art. III, § 18.

Having determined that L.B. 657 is constitutionally infirm as special legislation, we find it unnecessary to reach the other constitutional issues raised by the plaintiff. We have also considered the arguments raised by the amicus curiae in its brief and find them unpersuasive.

### ATTORNEY FEES

Plaintiff requests attorney fees and costs for the services of his attorneys in this case. Attorney fees and expenses may be recovered only where provided for by statute, or where the uniform course of procedure has been to allow such a recovery. *Rosse v. Rosse*, 244 Neb. 967, 510 N.W.2d 73 (1994).

Neb. Rev. Stat. § 24-204.01 (Reissue 1989) provides in relevant part:

When an original action is instituted in the Supreme Court by or against the state, or any office, department, or officer thereof, involving the constitutionality of any act of the Legislature no matter when such act was passed, attorney fees and costs may be allowed if any of the following conditions set forth in subdivision (1), (2), or (3) of this section are found to exist:

(1)(a) The action challenges the constitutionality of an act which the Attorney General has previously ruled constitutional or unconstitutional or as to which he has made no ruling . . . .

In this case, the Attorney General has made no ruling on the constitutionality of L.B. 657. Therefore, the necessary conditions for the awarding of attorney fees and costs have been met, and plaintiff is entitled to attorney fees.

## CONCLUSION

L.B. 657 is special legislation which unconstitutionally appropriates state funds in violation of Neb. Const. art. III, § 18. Judgment is entered for plaintiff and against defendants and each of them in their official capacities. The Treasurer of the State of Nebraska is hereby permanently enjoined from disbursing on behalf of the State of Nebraska any funds appropriated by 1993 Neb. Laws, L.B. 657, to depositors of any former industrial loan and investment companies, and the director of the Department of Administrative Services of the State of Nebraska and the director of the Department of Banking and Finance of the State of Nebraska are enjoined from implementing the provisions of L.B. 657.

Plaintiff is awarded $13,164.27 for attorney fees and expenses pursuant to § 24-204.01, in addition to costs of this action.

JUDGMENT FOR PLAINTIFF.