REQUESTED BY: Senator Chris Peterson Nebraska State Legislature
You have requested an opinion from this office regarding the constitutionality of LB 755. Following the adoption of AM0533, the legislation, in pertinent part, would appropriate "$30,000 from the General Fund for FY1997-98 to the [Nebraska] Department of Veterans' Affairs, for the Nebraska state donation for the Women In Military Service For America Memorial."
Pursuant to the enactment of Pub.L. No. 99-610,100 Stat. 3477, (November 6, 1986), the U.S. Congress authorized the Women in Military Service For America Memorial Foundation, Inc. to establish a memorial on federal land in the District of Columbia to honor women who have served in the Armed Forces of the United States. The federal law requires that the private foundation establish the memorial with non-federal funds. Id. Although it is unclear to us from the current language of LB 755, it appears that the legislation would authorize a $30,000 grant to the private foundation, which grant is to be paid by the Nebraska Department of Veterans' Affairs upon appropriation of funds to that agency from the Legislature.
You have posed three specific questions for our review.
 1. Is LB 755 in violation of the Nebraska Constitution, Article III, § 18; Article XIII, § 3; or Article XV, § 18?
In reviewing each of these three provisions, we note that, because the Nebraska Constitution "is not a grant but, rather, a restriction on legislative power, . . . the Legislature is free to act on any subject not inhibited by the Constitution." Stateex rel. Stenberg v. Douglas Racing Corp., 246 Neb. 901, 905,524 N.W.2d 61, 64 (1994); State ex rel. Creighton Univ. v. Smith,217 Neb. 682, 353 N.W.2d 267 (1984). In so acting, however, the court has established that "[t]he people of the state, by adopting a Constitution, have put it beyond the power of the [L]egislature to pass laws in violation thereof." State ex rel.Randall v. Hall, 125 Neb. 236, 243, 249 N.W. 756, 759 (1933);see also State ex rel. Stenberg v. Murphy, 247 Neb. 358,527 N.W.2d 185 (1995) ("constitutional language controls legislative language, not the other way around."); State ex rel. Caldwell v.Peterson, 153 Neb. 402, 45 N.W.2d 122 (1950) (the Legislature cannot lawfully act beyond limitations of Constitution).
Prohibition Against Local or Special Legislation.
Article III, Section 18 of the Nebraska Constitution provides that "[t]he Legislature shall not pass local or special laws in any of the following cases, that is to say: . . . Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. . . . In all other cases where a general law can be made applicable, no special law shall be enacted."
In construing Article III, § 18, the Nebraska Supreme Court has determined that "[b]y definition, a legislative act is general, and not special, if it operates alike on all persons of a class or on persons who are brought within the relations and circumstances provided for. . . ." Haman v. Marsh, 237 Neb. 699,709, 467 N.W.2d 836, 844-45 (1991) (citations omitted);State ex rel. Rogers v. Swanson, 192 Neb. 125, 219 N.W.2d 726
(1974). Thus, a legislative act can violate Article III, § 18 as special legislation in one of two ways: (1) by creating a totally arbitrary and unreasonable method of classification, or (2) by creating a permanently closed class. Swanson v. State,249 Neb. 466, 544 N.W.2d 333 (1996); City of Scottsbluff v.Tiemann, 185 Neb. 256, 175 N.W.2d 74 (1970); Haman v. Marsh.
The Article III, § 18 limitation is applicable to legislative appropriation bills as well as to substantive legislative enactments. See Henry v. Rockey, 246 Neb. 398,518 N.W.2d 658 (1994). In fact, the court has expressly determined that although the Legislature is specifically empowered to make appropriations for the expenses of the government, it "is not vested with unlimited power to make appropriations. `The purpose . . . of an appropriation bill is to make provision for lawfully taking money out of the state treasury. . . .'" Id. at 405, 518 N.W.2d at 663 (quoting Rein v. Johnson, 149 Neb. 67,78, 30 N.W.2d 548, 556 (1947), cert. denied 335 U.S. 814,69 S.Ct. 31, 93 L.Ed. 369 (1948). Therefore, the court has concluded: "[t]he Legislature is not empowered to make appropriations for purely charitable purposes. . . . The purse strings of this state are not open for the purpose of simply giving money away." Id. (citing Haman v. Marsh; Weaver v.Koehn, 120 Neb. 114, 231 N.W. 703 (1930)).
Based upon these principles, the court has found that "[t]he test for statutes challenged under the special-laws prohibitions is that they must bear a reasonable and substantial relation to the object sought to be accomplished by the legislation."Henry, 246 Neb. at 404, 518 N.W.2d at 662.
If LB 755 had proposed to appropriate funds directly to individual Nebraska women veterans, then the Article III, § 18 prohibition would likely preclude such an appropriation. The distinction, however, is that the proposed appropriation of taxpayer funds will be used for construction of a national memorial to past and future women veterans. The purpose stated within LB 755 for expenditure of the funds is to memorialize and honor, "while providing visibility and an educational experience about an important segment of the nation's history, women's roles in national defense." LB 755, as amended by AMO533, § 1. Additionally, the proposed expenditure would "be a tribute to Nebraska's [women veterans]." Id.
We find that, because the proposal incorporated within LB 755 is similar to other enactments of the Legislature which set aside tributary memorials to reflect other individuals and aspects of Nebraska history, it is not violative of Article III, § 18.See, e.g., Neb. Rev. Stat. § 72-724 — § 72-729.01
(1996) (authorizing creation of the Nebraska Hall of Fame Commission to "bring public attention and to recognize officially those people who . . . have achieved prominence and who were outstanding Nebraskans."); Neb. Rev. Stat. § 82-120 — §82-123 (1994) (authorizing the Nebraska State Historical Society to expend public funds for the purchase of highway historical markers which recognize historical events, personalities, and traditions); Neb. Rev. Stat. § 80-201 — § 80-205
(1994) (authorizing political subdivisions to erect statues, monuments, or other memorials commemorating the services of veterans who served in specified conflicts and wars).
Prohibition Against Lending Credit of the State.
You have also asked that we address whether LB 755 violates the provision of the state Constitution which mandates that "[t]he credit of the state shall never be given or loaned in aid of any individual, association, or corporation. . . ." Neb. Const. art. XIII, § 3. In its Haman decision, the Nebraska Supreme Court interpreted this provision. At issue in Haman was legislation which appropriated state tax money to compensate depositors who had suffered losses due to the failure of industrial loan and investment companies in Nebraska.
The court set out a three-prong test and found that, in order to establish a law as invalid under Article XIII, § 3, each of the following elements must exist: (1) The credit of the state (2) is given or loaned; (3) in aid of any individual, association, or corporation. 237 Neb. at 719, 467 N.W.2d at 850;Callan v. Balka, 248 Neb. 469, 536 N.W.2d 47 (1995). In addition, the court expressly held that "[t]he prohibition against the pledge of the state's credit does not hinge on whether the legislation achieves a `public purpose,' when the pledge benefits a private individual, association, or corporation." Id. at 722, 467 N.W.2d at 852. Rather, the key focus of Article XIII, § 3 is whether the state stands as a creditor through the expenditure of its funds or as a debtor by the extension of credit. Id.
Under the legislation it reviewed, the Haman court found that "the state would be forever liable for the losses of industrial company depositors. . . ." Id. at 720,467 N.W.2d at 850. Moreover, the "stated purpose of the act [was] redemption of the guarantees of a private corporation to depositors by obligating present and future taxes from the state's general fund." Id. Thus, the court found that the state's credit was "given or loaned." Since state funds would be provided to private depositors, the court found the third-prong of the Article XIII, § 3 to be implicated, as well, by the legislation.
To determine whether the expenditure of state funds proposed by LB 755 would violate Article XIII, Sec. 3, we return to the three-prong test set forth in Haman v. Marsh. The threshold question which must be analyzed is whether the appropriation proposed in LB 755 involves the "credit of the state." InHaman, the court stated that "[t]here is a distinction between the loaning of state funds and the loaning of the state's credit. When a state loans funds, it is in the position of creditor, whereas the state is in the position of debtor upon a loan of credit." Id. at 719-720, 467 N.W.2d at 850.
The $30,000 grant proposed by LB 755 is a one-time expenditure of state funds. Clearly, the appropriation authorized by LB 755 does not place the State of Nebraska in the position of a debtor or surety of another's debt. Therefore, we conclude that the legislative proposal does not violate Article XIII, Section 3 of the state Constitution. Our conclusion is that the use of state funds as a donation to a private foundation for the purpose of constructing a memorial to women veterans would not violate the constitutional prohibition against lending the credit of the state; however, the LB 755 proposal might be challenged as an expenditure of state funds for private purposes. (See our discussion, below, in response to your second question).
Limitation on Governmental Powers.
The additional provision of the Constitution which you have asked us to assess provides:
 The state or any local government may exercise any of its powers or perform any of its functions, including financing the same, jointly or in cooperation with any other governmental entity or entities, either within or without the state, except as the Legislature shall provide otherwise by law.
Neb. Const. art. XV, § 18. This provision has no application to LB 755. Under the current version of that bill, a state agency, at the direction of the Legislature, would be making a $30,000 grant to a private memorial foundation as a contribution to the construction of the Women In Military Service For America Memorial. Although construction of the memorial is expressly authorized by federal law, a private, incorporated foundation — and not the federal government — would be the recipient of the grant funds. Therefore, Section XV, § 18 is not implicated by the proposal set forth in LB 755.
 2. Would these moneys [which, for purposes of analysis, we assume to be the proposed $30,000 appropriation] be considered public moneys being used to encourage private enterprise?
Article XIII, § 3 of the Nebraska Constitution is the provision which is intended to prevent the State from extending its credit to private enterprises. United Community Services v.The Omaha National Bank, 162 Neb. 786, 77 N.W.2d 576 (1956). "Closely related to the prohibition against the giving or lending of the state's credit . . . is the principle of law that public funds cannot be expended for private purposes." Haman,237 Neb. at 721-722, 467 N.W.2d at 851.
This longstanding constitutional principle involves theexpenditure of state funds in contrast to the extension of credit. While the Constitution contains no express provision against expending funds for essentially private purposes, the Nebraska Supreme Court has stated that this principle "is grounded on the `fundamental concepts of our constitutional system.'" State ex rel. Douglas v. Thone, 204 Neb. 836, 842,286 N.W.2d 249 (1979) (quoting State ex rel. Beck v. City ofYork, 164 Neb. 223, 82 N.W.2d 269 (1957)); Oxnard Beet SugarCo. v. State, 73 Neb. 57, r'hrg denied, 73 Neb. 66 (1905).
There is no hard and fast rule for determining whether a proposed expenditure of public funds is for a public purpose. InPlatte Valley Public Power Irrigation District v. County ofLincoln, 144 Neb. 584, 14 N.W.2d 202 (1944), the Nebraska Supreme Court discussed the parameters of a "public purpose." Generally, the court noted that a "public purpose" is one which has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of citizens. Later, in United Community Services v. TheOmaha National Bank, 162 Neb. 786, 800, 77 N.W.2d 576 (1956), the court explained that
 [i]t is the province of the [L]egislature to determine matters of policy. In appropriating the public funds, if there is reason for doubt or argument as to whether the purpose for which the appropriation is made is a public or private purpose, and reasonable men might differ in regard to it, it is generally held that the matter is for the [L]egislature [to determine]. . . . [T]he vital point in all such appropriations is whether the purpose is public; and that, if it is, it does not matter whether the agency through which it is dispensed is public or not; that the appropriation is not made for the agency, but for the object which it serves; the test is in the end, not in the means [utilized to achieve the Unicameral's purpose].
 Id. at 800-801, 77 N.W.2d at 587 (citations omitted).
In State ex rel. Douglas v. Thone, 204 Neb. 836,286 N.W.2d 249 (1979), the court also held that there is no requirement that a legislative act calling for the expenditure of public funds need contain an express declaration of public purpose. Thus, our court has evidenced a willingness to engage in a somewhat flexible interpretation of the public purpose doctrine in relation to the expenditure of state monies. For example, with regard to housing, the court has found constitutional the act creating the Housing Authority of the City of Omaha (Lennox v.Housing Authority of City of Omaha, 137 Neb. 582, 290 N.W. 451
(1940)), and has found as constitutional the act creating the Nebraska Mortgage Finance Fund (State ex rel. Douglas v.Nebraska Mortgage Finance Fund, 204 Neb. 445, 283 N.W.2d 12
(1979)).
The court, however, has also held that laws which authorize the expenditure of state funds to encourage private enterprises do not serve a public interest. A statute offering compensation or a bounty to private companies to encourage the manufacture of sugar and chicory was found unconstitutional in Oxnard BeetSugar Co. v. State, 73 Neb. 57 (1905). Further, in Chase v.County of Douglas, 195 Neb. 838, 241 N.W.2d 334 (1976), the court found that the provisions of the statute authorizing expenditures for the purpose of acquiring real estate or options on real estate for industrial development were in derogation of Article XIII, § 3.
Clearly, the expenditure of funds authorized in LB 755 would be made to a private foundation. It is asserted, however, that the purpose of the expenditure would be to specially recognize the State of Nebraska's financial contribution to the memorial honoring the Nation's women veterans. Such an expenditure is similar to legislation enacted in 1933 which authorized the collection of voluntary donations and subscriptions and the levy of state taxes for the purpose of placing, on behalf of the State of Nebraska, memorial statues of William Jennings Bryan and J. Sterling Morton in Statuary Hall in the U.S. Capitol in Washington, D.C. See 1933 Neb. Laws, c. 97, § 1, § 3, p. 405-406. We cannot clearly conclude that such expenditures have no valid "public purpose." Thus, if the Legislature determines, as a matter of policy, that such an expenditure is appropriate, and demonstrates the basis for its decision during debate on the measure, then it would likely survive scrutiny by the Nebraska Supreme Court under Article XIII, § 3.
 3. If LB 755 is in violation of the Nebraska Constitution, is there any means in which the Nebraska Legislature could appropriate funding to ensure that Nebraska women veterans would receive the recognition that they deserve?
Due to our responses to the preceding questions, it is unnecessary to address this question.
Sincerely,
 DON STENBERG Attorney General
 Lauren L. Hill Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved:
Don Stenberg
Attorney General