STATE OF NEBRASKA EX REL. CLARENCE S. BECK, ATTORNEY GENERAL, PLAINTIFF, V. CITY OF YORK ET AL., DEFENDANTS.

82 N. W. 2d 269

Filed April 5, 1957.   No. 34156.

*Clarence S. Beck,* Attorney General, and *Clarence A. H. Meyer,* for plaintiff.

*Cline, Williams, Wright & Johnson* and *Wallace W. Angle,* for defendants.

224

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an original action brought by the State of Nebraska on the relation of the Attorney General, at the direction of the Governor pursuant to section 84-205 (9), R. R. S. 1943, to enjoin the defendants from proceeding under section 18-1601 to section 18-1613, R. R. S. 1943, because of its constitutional invalidity. The defendants filed a general demurrer to the petition. The sole question before the court is whether or not the petition states a cause of action.

The defendants are the city of York and its mayor and city councilmen. The petition alleges that the city, acting through the members of the city council, entered into an agreement with the York Cold Storage Company and the York Packing Company, that upon the completion of certain industrial buildings to be constructed by the York Cold Storage Company, the city would purchase the same by issuing revenue bonds pursuant to the authority contained in section 18-1601 to section 18-1613, R. R. S. 1943, hereinafter called the Act. The petition also alleges that upon the purchase of the industrial buildings, the city proposes to lease them to the York Packing Company as a packing plant for the slaughtering of hogs.

Plaintiff asserts that the Act is violative of Article XIII, section 3, of the Constitution of this state, which provides: "The credit of the state shall never be given or loaned in aid of any individual, association, or corporation."

It is here contended that the prohibition contained in the foregoing constitutional provision applies only to the State as an entity and has no application to political subdivisons thereof. We do not concur in this view. Political subdivisions of the State exist at the will of the State exercised through the Legislature. For us to

say that the State may not loan its credit to an individual, association, or corporation, but that it might create a political subdivision and authorize it to do that which the State itself is prohibited from doing would be, to say the least, a very anomalous situation. It would permit the State to do by indirection the very thing it could not directly do, a theory which has been consistently condemned by this court. Steinacher v. Swanson, 131 Neb. 439, 268 N. W. 317; Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85. It is clear that the framers of our Constitution had in mind a prohibition against giving or loaning the credit of the State or any subdivision thereof for a purely private purpose. This supports the fundamental principle that public moneys may not be used for private purposes. To impose such a prohibition as a matter of constitutional policy on the State, only to have its beneficent purpose thwarted by a refinement of definition not contemplated by its framers, would be to avoid the very purpose for which it was intended. It is not the function of courts to thus rewrite constitutional provisions to avoid their plain effect. It is the plain intention of this provision that state government, including political subdivisions thereof, shall not extend credit in aid of private persons and private enterprises. It is a prohibition, also, to protect the State and its political subdivisions against reckless financial involvement in private enterprises supposed to serve the public good but which are in fact dominated by private interest. We conclude that the prohibition contained in Article XIII, section 3, Constitution of Nebraska, applies to the State and all political subdivisions thereof.

It is contended, also, that the provision has no application in the present case for the reason that the credit of the city was not given or loaned. It is argued that the revenue bonds were not general obligations of the city and that they would not become a charge against its general credit or taxing powers. It cannot be questioned

that the revenue bonds are payable solely out of revenues derived from the leasing of the project to be financed by the bonds so issued. This court has so limited the liability of a city on this type of bond. Kirby v. Omaha Bridge Commission, 127 Neb. 382, 255 N. W. 776. Is the issuance of revenue bonds in the manner prescribed by the Act an extension of the credit of the city?

It is true that the revenue bonds are not a general liability of the city and they are not subject to payment through the exercise of the taxing power. But they do cast burdens upon the city with reference to their issuance and payment. The city and its officers are charged with the duty of fixing and collecting the rentals from which the revenue bonds are to be paid. This necessitates the execution of leases, the fixing of rentals, the taking of chattel mortgages on equipment to secure the payment of rent, the providing of insurance coverage, and the determination of payments to be made in lieu of taxes. It imposes duties and responsibilities upon the city and its officers on matters which are private rather than public in character. The issuance of the bonds in the name of the city for the payment of the cost of the project evidences the fact that the credit of the city has been extended. The city is the payer of the bonds and it is primarily liable for their payment. The bonds become the obligations of the city. The fact that the means of payment is limited does not make it any less so. A failure of payment is a default by the city. The constitutional prohibition does not infer that the credit of the State or its political subdivisions may be given or loaned except when a general liability exists. The prohibition clearly provides that the credit of the State may not be given or loaned to an individual, association, or corporation under any circumstances. When the State or a political subdivision thereof becomes a payer of a revenue bond or any other evidence of indebtedness which

is to be used in the accomplishment of a private as distinguished from a public purpose, the credit of the State has been given or loaned contrary to Article XIII, section 3, of the Constitution. If evidences of indebtedness by interested private persons are inadequate and revenue bonds of the city are sufficient, either the credit of the city has been extended or their purchasers are victims of a base delusion. It seems clear to us that the revenue bonds are issued by the city in its own name to give them a marketability and value which they would otherwise not possess. If their issuance by the city is an inducement to industry, some benefits must be conferred, or it would be no inducement at all. Such benefits, whatever form they may take, necessarily must be based on the credit of the city. The loan of its name by a city to bring about a benefit to a private project, even though general liability does not exist, is nothing short of a loan of its credit. The use of the city as the payer of the bonds is intended to give respectability to them because of the general acceptability of cities as a source of bond issues in financial markets. It is a loan of the credit of the city within the meaning of the constitutional prohibition.

The defendants cite cases from other states upholding the constitutionality of similar acts. Faulconer v. City of Danville, 313 Ky. 468, 232 S. W. 2d 80; Newberry v. City of Andalusia, 257 Ala. 49, 57 So. 2d 629; Holly v. City of Elizabethton, 193 Tenn. 46, 241 S. W. 2d 1001. These cases are based on what we deem fundamental fallacies of reasoning. The first is that a revenue bond for which a city is not generally liable is not within the prohibition against the State giving or loaning its credit. The second is that the issuance of such revenue bonds for the construction of industrial plants for private users is a valid exercise of the proprietary powers of a municipality. The third is that the issuance of revenue bonds for the construction of industrial buildings for private use is for a public purpose.

We have already discussed the first point and we shall give it no further consideration here. With respect to the second point, we point out that the exercise of proprietary powers is limited by the rule that the subject sought to be included in the exercise of a proprietary power must bear a reasonable relation to the public convenience and welfare. In other words, it must relate to the public good as distinguished from a purpose dominated by private interest. This point is closely related to the question whether the issuance of revenue bonds by a city to construct an industrial plant for the slaughtering and processing of hogs is for a public purpose. We hold that it is not. We think the reasoning of the court involving a similar statute in State v. Town of North Miami (Fla.), 59 So. 2d 779, points the way to the correct conclusion.

In the last-cited case the court said: "This Court has approved special acts of the Legislature authorizing advertising programs, the acquisition of land, for golf courses, parks, playgrounds and recreational and hospital centers. The Court has also approved special acts authorizing the construction of buildings which served a public purpose and many other acts authorizing counties and municipalities to acquire property and make improvements to public property which served a public purpose. In none of the cases decided by this Court since the adoption of our present Constitution have we approved any special legislative acts which authorized any of the political subdivisions or governmental units of the State to acquire property and erect buildings thereon for the exclusive use of a private corporation for private gain and profit.

"Every new business, manufacturing plant, or industrial plant which may be established in a municipality will be of some benefit to the municipality. A new super market, a new department store, a new meat market, a steel mill, a crate manufacturing plant, a pulp mill, or other establishments which could be named

without end, may be of material benefit to the growth, progress, development and prosperity of a municipality. But these considerations do not make the acquisition of land and the erection of buildings, for such purposes, a municipal purpose. * * * Our organic law prohibits the expenditure of public money for a private purpose. It does not matter whether the money is derived by ad valorem taxes, by gift, or otherwise. It is public money and under our organic law public money cannot be appropriated for a private purpose or used for the purpose of acquiring property for the benefit of a private concern. It does not matter what such undertakings may be called or how worthwhile they may appear to be at the passing moment. The financing of private enterprises by means of public funds is entirely foreign to a proper concept of our constitutional system. Experience has shown that such encroachments will lead inevitably to the ultimate destruction of the private enterprise system." We deem the foregoing to be most persuasive reasoning and a statement of controlling principle.

We summarize as follows: The constitutional prohibition against the State as to giving or loaning its credit to an individual, association, or corporation is applicable to all subdivisions of the State. The issuance of revenue bonds by a city, although the city is not generally liable for their payment, is an obligation of the city even though the source and method of payment is restricted. The money realized from revenue bonds is public money and it may not be appropriated for a private purpose or used for the purpose of acquiring property for the benefit of a private concern. It is not material what such undertakings may be called, or what forms are devised to conceal their main purpose, or how worthwhile they may appear to be, when the question of constitutionality is presented, their substance will be examined. The financing of private enterprises with public funds is foreign to the funda-

mental concepts of our constitutional system. To permit such encroachments upon the prohibitions of the Constitution would bring about, as experience and history have demonstrated, the ultimate destruction of the private enterprise system. We have not overlooked the fact that the Legislature determined that the Act was for a public purpose. While such a legislative declaration is entitled to great weight, it is not conclusive. There are limits beyond which the Legislature cannot go. It cannot authorize a city to spend public money, or lend or give away, directly or indirectly, its credit or property for a purpose which is not a public one.

The purpose of the statute, and the contract in the present case springing therefrom, is to assist a private corporation that is engaged in an enterprise for profit. It is true, of course, that the city may be benefited by the location of the company in the city. It may produce employment for citizens of the community. It may tend to balance a locally restricted economy. But general benefit to the economy of a community does not justify the use of public funds of the city unless it be for a public as distinguished from a private purpose. This is simply a case where the city is attempting to use the powers, credits, and public moneys of the city to purchase land and erect industrial buildings thereon for the use of a private corporation for private profit and private gain. It serves no public or municipal purpose. The Act purports to grant powers to cities which are beyond the authority of the Legislature to confer.

This court, in Oxnard Beet Sugar Co. v. State, on rehearing, 73 Neb. 66, 105 N. W. 716, dealt with a problem somewhat similar to the one we have before us. The court said: "The legislature cannot appropriate the public moneys of the state to encourage private enterprises. The manufacturing of sugar and chicory is a private enterprise, and the public money or credit

cannot be given or loaned in aid of any individual, association or corporation carrying on such enterprises. Const., art. XII, sec. 3."

To permit legislation of this character to stand in the face of constitutional prohibitions would constitute a death blow to the private enterprise system and reduce the Constitution to a shambles in so far as its protection of private enterprise is concerned. The contract pleaded in the petition is void and the Act upon which it is based is a plain violation of the letter and spirit of Article XIII, section 3, of the Constitution of this state. The demurrer to the petition is therefore overruled.

DEMURRER OVERRULED.