REQUESTED BY: Senator Chris Beutler Nebraska State Legislature Unicameral, State Capitol Lincoln, Nebraska 68509
Dear Senator Beutler:
In your letter of April 14, 1981, you stated that LB 331 provides for a $50,000 gratuity to be awarded to the developer of the best high protein food made from distillers' grain or the process of ethanol distillation. You then requested our opinion as to whether LB 331 violates:
A. Article XIII, Section 3 of the Nebraska Constitution prohibiting the lending of the credit of the state.
B. Article III, Section 19 of the Nebraska Constitution prohibiting the payment of any extra compensation for services rendered.
C. Any other provision of the Nebraska Constitution.
We have reviewed LB 331 in light of your request, and our conclusions are set forth below.
LB 331 provides that the Nebraska Gasohol Committee shall encourage the development and subsequent production of high protein food products for human consumption which have been derived from distillers' grain or the process of ethanol distillation. The bill further provides that the Nebraska Gasohol Committee shall evaluate all such high protein food products under criteria set forth in the legislation. The provision of LB 331 which you have questioned provides that the Nebraska Gasohol Committee may award a $50,000 development gratuity to a person whose high protein food product best meets the criteria set forth in the bill. A `person' eligible for this $50,000 development gratuity includes any individual, firm, partnership, association, or corporation.
Article III, Section 19 of the Nebraska Constitution provides, in pertinent part:
 The Legislature shall never grant any extra compensation to any public officer, agent, or servant after the services have been rendered nor to any contractor after the contract has been entered into, except that retirement benefits of retired public officers and employees may be adjusted to reflect changes in the cost of living and wage levels that have occurred subsequent to the date of retirement, . . .
On the basis of this language, LB 331 does appear valid under Article III, Section 19. This constitutional provision specifically applies to public officers, agents, servants or persons who contract with the state. The persons entitled to the development gratuity under LB 331 would not have this employment or contractual relationship with state government. Therefore, LB 331 appears to be valid based upon the limitations of the language of Article III, Section 19 of the Nebraska Constitution.
While we have concluded that LB 331 does not violate Article III, Section 19 of the Nebraska Constitution, we have serious concerns as to the constitutional validity of LB 331 under Article XIII, Section 3 of the Nebraska Constitution.
Article XIII, Section 3 of the Nebraska Constitution deals with lending the credit of the state and provides, in part:
 The credit of the state shall never be given or loaned in aid of any individual, association, or corporation, . . .
Our Supreme Court has stated that this constitutional provision prohibits the Legislature from appropriating the public monies of the state to encourage private enterprises.Oxnard Beet Sugar Co. v. State, 73 Neb. 57, 105 N.W. 716
(1905). More recently, in State ex rel. Beck v. City ofYork, 164 Neb. 223, 82 N.W.2d 269 (1957), our Supreme Court stated:
 It is clear that the framers of our Constitution had in mind a prohibition against giving or loaning the credit of the State or any subdivision thereof for a purely private purpose. This supports the fundamental principle that public moneys may not be used for private purposes. . . .
 It is the plain intention of this provision [Article XIII, Section 3] that state government, including political subdivisions thereof, shall not extend credit in aid of private persons and private enterprises.
Id. at 225, 82 N.W.2d at 271. Under this case law, it is clear that state monies may not be appropriated to private persons for essentially private purposes. While LB 331 contains a recital of public purpose, it appears to us that a development gratuity paid by the state to a private person for the development of a new product does entail the payment of state monies for a private purpose. Therefore, we feel that the development gratuity provisions in LB 331 are of suspect constitutional validity under Article XIII, Section3 of the Nebraska Constitution.
We are aware that recent cases have evidenced a more liberal interpretation of the public purpose doctrine in relation to the expenditure of state monies, and have indicated that the purpose involved in the use of state funds controls over the entity selected for receipt of those funds. United Community Services v. Omaha National Bank,162 Neb. 786, 77 N.W.2d 576 (1956), State ex rel. Douglasv. Nebraska Mortgage Finance Fund, 204 Neb. 445,283 N.W.2d 12 (1979), State ex rel. Douglas v. Thone, 204 Neb. 836,286 N.W.2d 249 (1979). However, we feel that these cases are distinguishable from the current situation, and, in any event, the facts presented by LB 331 are on point with theOxnard case, supra. In the Oxnard case, the state appropriated public funds as a bounty to encourage private corporations to increase the production of sugar and chicory. Our Supreme Court found this expenditure of public funds to be unconstitutional.
We note one further concern in relation to part C of your letter of April 14th. In previous opinions, we have stated that substantive legislative provisions should not be included in the same bill along with appropriation legislation.See Report of the Attorney General, 1975-1976, No. 215 at p. 296, and Report of the Attorney General, 1977-1978, No. 241 at p. 368. Our concern in this regard is that the various constitutional provisions relating to appropriation bills indicate that appropriation bills must be restricted to making appropriations only and should not enact substantive legislation. If LB 331 is read to make a specific appropriation to the Nebraska Gasohol Committee in addition to its substantive legislative provisions, it could well be of suspect constitutional validity for that reason.
Sincerely yours, PAUL L. DOUGLAS Attorney General Dale A. Comer Assistant Attorney General