REQUESTED BY: Senator John W. DeCamp Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator DeCamp:
This is in response to your letter of February 22, 1985, seeking an opinion on the constitutionality of LB 588. Specifically you ask whether the bill violates Article XIII, Section 3, of the Constitution which provides that, `The credit of the state shall never be given or loaned in aid of any individual, association, or corporation, . . .'
LB 588, which is the Nebraska State Land Bank Act, establishes the Nebraska State Land Bank Board. This would appear to be a quasi-public corporation. See, State exrel. Douglas v. Nebraska Mortgage Finance Fund, 204 Neb. 445
at 454, 283 N.W.2d 12 (1979). The act states specifically that the board is not a state agency. As we understand the bill, the State Land Bank Board would issue certificates of guaranteed land value to farmers and ranchers setting a guaranteed value on their farmland. These certificates are in essence a promise to purchase the land at the guaranteed value. The board will in turn issue general obligation bonds to guarantee the certificates. Upon default of a farmer's or rancher's loan with a lending institution, the board will purchase the land at the guaranteed value unless sold for more than this amount, and thus the lender will be guaranteed payment of his loan.
In view of the holding in State ex rel. Douglas v.Nebraska Mortgage Finance Fund, supra, we cannot say that this bill as we understand it is a violation of Article XIII, Section 3, of the Constitution. While not stated in so many words, the bill sets out what appears to be a legislative determination of public purpose. Of course, the prohibition of Article XIII, Section 3, is applied only to the use of public funds to benefit a private purpose. As in theMortgage Finance Fund case, the court will give great deference to such legislative findings of public purpose. Such findings, however, are not conclusive and there are limits beyond which the Legislature cannot go. State ex rel. Beckv. City of York, 164 Neb. 223, 82 N.W.2d 269 (1957). We thus cannot say that the court, by approving the Mortgage Finance Fund, intended to suggest that proposals for any and all arguably public purposes would be similarly condoned. As a result of the increasing use of devices which essentially permit the state to do indirectly what it cannot do directly, the court will at some point in time be faced with the prospect of essentially discarding the constitutional prohibitions against indebtedness and the extension of the state's credit.
We would also point out that in the Mortgage FinanceFund case, the court noted specifically that there were no state funds involved, and that the revenues generated by the bond sales fell within the special fund doctrine which would take the matter out of Article XIII. The same rationale would appear to apply in this case. We would, however, be remiss if we did not point out a potential problem in this regard. Article XIII, Section 1, of the Constitution is, of course, a limitation upon the indebtedness of the state. This bill authorizes the board, a nonstate agency, to issue general obligation bonds. Presumably these bonds are only the obligation of the board, but in order to make this perfectly clear and to avoid future legal questions, a statement in the legislation that the bonds are not in anyway intended to be an obligation of the state would clarify this matter.
Sincerely,
A. EUGENE CRUMP Deputy Attorney General
John Boehm Assistant Attorney General