REQUESTED BY: Senator Rex Haberman Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Haberman:
In your letter of January 28, 1985, you call our attention to LB 278, which if passed, would give to the Nebraska Investment Finance Authority the power to issue bonds to pay the cost of buying or taking assignment of agricultural loans made by production credit associations or loans made by any failed financial institution.
This bill would authorize the Nebraska Investment Finance Authority to utilize a maximum of one billion dollars to finance such purchases or assignments, and calls for the appropriation by the Nebraska Legislature of 150 million dollars to the fund to secure the bonds issued.
Your specific question was `would the State be able to loan funds to the failed Commonwealth Savings Company under LB 278?' (Emphasis added.) As we read the provisions of LB 278, it would not be the state which would be loaning money to Commonwealth or any other failed financial institution, but rather it would be the Nebraska Investment Finance Authority who would issue bonds to be sold to the public, the proceeds of which would be used to purchase or secure loans made by institutions such as Commonwealth. We would be of the opinion that the provisions of Article XIII, Sections 1 and 3, of the Nebraska Constitution would absolutely prohibit the state directly loaning funds to any financial institution. We believe this to be true regardless of the avowed public purpose of such an extension of credit.
As you may recall, the constitutionality of the Nebraska Investment Finance Authority's predecessor, the Nebraska Mortgage Finance Fund, was tested in the case ofState ex rel. Douglas v. Nebraska Mortgage Finance Fund,204 Neb. 445, 283 N.W.2d 12 (1979). There the Nebraska Supreme Court held that a fund which was premised on the public policy of providing adequate low cost housing was for a valid public purpose, and that since the fund created there was not a state entity but rather was a quasi-corporation independent from the state, that the prohibitions found within Article XIII of the Nebraska Constitution were not applicable and that that financial arrangement was therefore constitutional.
The court has not had occasion to rule on the expansion of the concept originally tested with reference to the Nebraska Mortgage Finance Fund as that concept has grown to include other aspects of the economy other than housing, nor has the court been faced with a proposal such as this calling for the appropriation of state monies to advance such an avowed public purpose.
We do not believe that the court by approving the Mortgage Finance Fund intended to suggest that proposals for any and all arguably public purposes would be similarly condoned. As a result of the escalation of the use of this device which essentially permits the state to do indirectly that which it could not do directly, the court will at some point in time be faced with the prospect of essentially discarding the constitutional prohibition against indebtedness and the extension of the state's credit.
We are trouble by the fact that here state monies will be appropriated for the purpose of serving as collateral for the loans extended by the fund. We believe the court will scrutinize closely the public purpose behind such an appropriation for, in actuality, it is doing indirectly that which the Legislature could not do directly.
The present bill goes one significant step beyond the Nebraska Mortgage Finance Fund in that 150 million dollars of state money are appropriated to the Investment Finance Authority to secure the bonds which will be issued by the Authority. It is this appropriation which raises the issue of whether there is a violation of Article XIII, Section 3, of the Nebraska Constitution, which provides that, `The credit of the state shall never be given or loaned in aid of any individual, association, or corporation, . . .'
This provision has been interpreted simply to mean that there should not be an expenditure of public funds for a private purpose or to encourage private enterprise. `The Legislature cannot appropriate the public monies of the state to encourage private enterprises.' Oxnard Beet SugarCo. v. State, 73 Neb. 67 at 68, 105 N.W. 716 (1905).See, also, State ex rel. Beck v. City of York,164 Neb. 223 at 229, 82 N.W.2d 269 (1957), and United CommunityServices v. The Omaha National Bank, 162 Neb. 786 at 799-800, 77 N.W.2d 576 (1956). It should be noted that this caselaw has interpreted the constitutional language `credit of the state,' to apparently mean any expenditure or direct appropriation of public money, as well as the extension of credit or granting of a loan, and not simply the obligation of the state for future indebtedness as one would normally construe the meaning of term `credit.' In this regard,see, also, Chase v. County of Douglas, 195 Neb. 838 at 850, 241 N.W.2d 334 (1976). Likewise, the mere transfer of money from the State General Fund to what is in essence a quasi-public corporation (see, State ex rel. Douglas v.Nebraska Mortgage Finance Fund, 204 Neb. 445 at 454,283 N.W.2d 12 (1979)) would not appear to alter the status of these funds as public funds. Again, the constitutional prohibition has been interpreted in a very general fashion to limit the expenditure of public funds for a private purpose, regardless of the nature of these public funds or by whom they are held. See, Chase v. County of Douglas,supra, at 847.
Certainly, in State ex rel. Douglas v. Nebraska MortgageFinance Fund, supra, the court made it abundantly clear in its analysis that there were no state funds involved in the repayment of any debt contemplated by the act.
 The Act does not, however, violate Article XIII, section 3, because the credit of the state is not in any manner being given or loaned in aid of any individual. Only the Fund is involved. It is the Fund which acquires the monies through the sale of bonds, and it is the Fund which repays the bonds through revenue it acquires. If there is insufficient revenue with which to repay the bonds, the state in no manner becomes obligated or liable. The Act specifically provides that the bonds may not be a debt, liability, or general obligation of the state, and must contain on the face thereof a statement that neither the faith and credit nor the taxing power of the state is pledged to the payment of the principal of or the interest on such bonds. § 76-1630, R.S. Supp., 1978. The Act could not be clearer that the credit of the state is not being given or loaned in any manner.
Id. at 461-462. This, of course, would not be the case under the proposed bill wherein these public funds would be used to the direct benefit of private individuals who purchased the bonds in the event that there is a default of the bonds. Arguably then, this portion of the legislation would use public funds to directly benefit private individuals, and not those individuals who might otherwise benefit from the application of the bond revenues themselves which is part of the avowed public purpose of the legislation.
If, however, the court should find that the stated public purpose of this legislation covers this particular aspect of the bill involving the infusion of state funds, this would eliminate the constitutional prohibition of Article XIII, Section 3. Of course, as we have indicated, the court will give great deference to legislative findings of public purpose, nevertheless, these are not conclusive and there are limits beyond which the Legislature cannot go. Stateex rel. Beck v. City of York, supra, at 230. We thus cannot say with any certainty how the court will view this particular aspect of LB 278 in determining whether the appropriation is for a public purpose and thus whether or not there is a violation of Article XIII, Section 3. Obviously, it is a significant departure from the Mortgage FinanceFund case and this may well have some bearing on any analysis of this particular question.
However, if the Legislature and the court find that such an appropriation is for a valid public purpose, then the remainder of the bill would no doubt be considered constitutional. This conclusion is premised on, in addition to the court's finding of a valid public purpose, the assumption that the entirety of the appropriation would be made this session and that it would not be contingent upon revenue being generated from some other future source or upon future appropriations which we believe would violate ArticleIII, Section 22, of the Nebraska Constitution.
We hope this adequately responds to your inquiry.
Sincerely,
A. EUGENE CRUMP Deputy Attorney General
John Boehm Assistant Attorney General