REQUESTED BY: Allan L. Abbott State Engineer/Director of Department of Roads
You have requested an Attorney General's Opinion "as to the legality of the State of Nebraska Department of Roads permitting . . . [an] archway to be constructed in the airspace above Interstate 80."
Background
The Great Platte River Road Memorial Foundation has requested that the State of Nebraska Department of Roads permit construction of an archway in the airspace above the Interstate 80 right-of-way near Kearney. In 1973, an opinion from former Attorney General Clarence Meyer concluded the legality of a similar proposed project over Interstate 80 was "very doubtful" and that "the State may not lease or permit for use a part of the highway right-of-way for the construction of the Pioneer Monument, as proposed." 1973-74 Rep. Att'y Gen. 8, 11 (Jan. 22, 1973).
This opinion will examine current Nebraska statutes governing state right-of-way, and will reexamine the constitutional issue addressed in the 1973 opinion.
Analysis
Nebraska law prohibits physical encroachments and structures within the state's right-of-way, except by written consent: "The rights-of-way acquired by the department shall be held inviolate for state highway and departmental purposes and no physical or functional encroachments, structures, or uses shall be permitted within such right-of-way limits, except by written consent of the department." Neb. Rev. Stat. Ann. § 39-1359 (Michie 1995).[1]
Nebraska law also authorizes the Department of Roads to lease, rent, or permit for use any area or land acquired for highway purposes:
 The Department of Roads, subject to the approval of the Governor, and the United States Department of Transportation if such department has a financial interest, is authorized to lease, rent, or permit for use, any area, or land and the buildings thereon, which area or land was acquired for highway purposes. The Director-State Engineer, for the department, and in the name of the State of Nebraska, may execute all leases, permits, and other instruments necessary to accomplish the foregoing. Such instruments may contain any conditions, covenants, exceptions, and reservations which the department deems to be in the public interest, including, but not limited to, the provision that upon notice that such property is needed for highway purposes the use and occupancy thereof shall cease. If so leased, rented, or permitted to be used by a municipality, the property may be used for such governmental or proprietary purpose as the governing body of the municipality shall determine, and such governing body may let the property to bid by private operators for proprietary uses. All money received as rent shall be deposited in the state treasury and by the State Treasurer placed in the Highway Cash Fund, subject to reimbursement, if requested, to the United States Department of Transportation for its proportionate financial contribution.
Neb. Rev. Stat. Ann. § 39-1323.01 (Michie 1995).
As used in the statute above, "any area, or land" would include the air space above the right of way pursuant to common law. See United Masonry, Inc. v. Jefferson Mew, Inc.,237 S.E.2d 171, 181 (Va. 1977).
Therefore, under these Nebraska statutes and the applicable common law, the Department of Roads owns the airspace above land it has acquired for highway purposes and may lease, rent, or permit for use such airspace to others except insofar as such lease or use would be prohibited by some other provision of law.
In 1973-74 Rep. Att'y Gen. 8 (Jan. 22, 1973), a previous Attorney General examined the same statutes set forth above and concluded they would, if constitutional, "authorize the transaction contemplated in connection with the Pioneer Monument." Id. at 10. However, the opinion went on to discuss Neb. Const. art. XIII, § 3 which provides "The credit of the State shall never be given or loaned in aid of any individual, association, or corporation." The opinion quoted State ex rel.Beck v. City of York, 164 Neb. 223, 82 N.W.2d 269 (1957) and the court's discussion therein of the "credit of the state" provision as well as the prohibition against the expenditure of public funds for private purposes. Id. at 11. Without explaining exactly how the proposed archway violated these provisions, the opinion concluded, "The language in the Beck and Meyer cases is quite broad, and leads to the conclusion that the State may not lease or permit for use a part of the highway right-of-way for the construction of the Pioneer Monument, as proposed." Id.
at 11.
Whatever the validity of the 1973 opinion at the time, it is clearly not valid today. In 1991, the Nebraska Supreme Court clarified the test for addressing alleged violations of Article XIII, § 3, and the Court ended the confusion between the prohibition against loaning the credit of the state and the prohibition against expending state funds for private purposes. The Court held that to establish a violation of Article XIII, § 3, three elements must be proved: (1) the credit of the state (2) was given or loaned (3) in aid of any individual, association, or corporation. Haman v. Marsh, 237 Neb. 699, 719,467 N.W.2d 836 (1991). See also Callan v. Balka, 248 Neb. 469,536 N.W.2d 47 (1995).
The first determination to be made, then, is whether leasing state right-of-way to private entities would involve the credit of the State. "There is a distinction between the loaning of state funds and the loaning of the State's credit. When a state loans funds, it is in the position of creditor, whereas the state is in the position of debtor upon a loan of credit." Haman v.Marsh, 237 Neb. at 719-729. In short, the "credit of the state" provision in Article XIII, § 3 was "designed to prohibit the state from acting as a surety or guarantor of the debt of another." Id. at 718; id. at 722.
In Haman, the Court found that under the legislation under review in that case "the state would be forever liable for the losses of industrial company depositors. . . ." Id. at 720. "The stated purpose of the act is redemption of the guarantees of a private corporation to depositors by obligating present and future taxes from the state's general fund." Id. In contrast, the leasing of state right-of-way pursuant to Neb. Rev. Stat. §39-1323.01 in no way involves the credit of the state. The State is not in the position of a debtor nor in the position of a surety or guarantor of the debt of another. Consequently, the credit of the state is not being given or loaned under a lease of state right of way.
The constitutional analysis does not end here, however. "Closely related to the prohibition against the giving or lending of the state's credit . . . is the principle of law that public funds cannot be expended for private purposes." Haman v. Marsh,237 Neb. 699 at 721-22. This constitutional principal involves the expenditure of state funds in contrast to the extension of credit. Id. at 722.
It is a longstanding principle of constitutional law in Nebraska that public funds cannot be expended for private purposes. Haman v. Marsh, 237 Neb. 699, 722 (1991); State exrel. Douglas v. Nebraska Mortgage Finance Fund, 204 Neb. 445
(1979); State ex rel. Douglas v. Thone, 204 Neb. 836 (1979);State ex rel. Beck v. City of York, 164 Neb. 223 (1957);Oxnard Beet Sugar Co. v. State, 73 Neb. 66 (1905). The Constitution of Nebraska contains no express provision against expending funds for essentially private purposes. This principal "is grounded on the `fundamental concepts of our constitutional system.'" Douglas v. Thone, 204 Neb. at 842 (quoting Beck v.City of York, 164 Neb. 223). The Nebraska Supreme Court has said this principal "emanates" from Article XIII, § 3. Haman v.Marsh, 237 Neb. at 722.
A lease of state right-of-way to a private entity would not involve an expenditure of public funds for a private purpose unless the lease was for less than fair value. The Department of Roads cannot give away property acquired for highway purposes.See Op. Att'y Gen. 91056 (June 18, 1991). However, the contemplated transaction is a lease, and not a transfer of title. Furthermore, the area in question is simply airspace.[2]
In sum, the proposed transaction does not involve the "credit of the state" as it does not place the State in the position of a debtor. Furthermore, provided the lease is for fair market value, there is no expenditure of public funds for a private purpose.
Consequently, the proposed use of Interstate 80 right-of-way airspace for an archway is both statutorily authorized and constitutional.
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved By:
Don Stenberg
Attorney General
[1] "Right-of-way" is defined as "land, property, or interest therein, usually in a strip, acquired for or devoted to a road, street, or highway." Neb. Rev. Stat. Ann. § 39-1302(30) (Michie 1995).
[2] We do not, by this statement, imply that airspace does or does not have significant value. The fair lease value is a matter to be determined by the Department of Roads through its usual process. We note that the Department of Roads leased airspace to the City of Lincoln in 1994 for a skywalk across "O" Street (Hwy 34).