REQUESTED BY: Senator Jim Jones Nebraska State Legislature
The federal "cushion of credit payments program," set out at7 U.S.C. § 940c and 7 CFR, Subpart B, §§ 1703.10 through 1703.68, is a federal program whereby Rural Electrification Act borrowers can obtain federal loans and grants for rural economic development purposes. In your opinion request letter, you describe the program as follows:
 The substance of the federal statutory and regulatory provisions are that "cushion of credit" funds may be used for rural economic development and job creation projects; that the funds are to be made available to Rural Utilities Service (RUS) borrowers as defined, and that in regard to zero interest loans, reasonable repayment terms should be established. Under this Rural Economic Development Loan and Grant (REDLG) program, federal funds could be loaned to an eligible RUS borrower like a public power district which would make a "pass-through" loan to another entity that will own or undertake a private development project using the proceeds of the loan. One of the requirements of the REDGL program is that the RUS borrower is required to obtain a letter of credit from a financial institution satisfactory to RUS to honor a draft drawn on the RUS borrower, should such borrower fail to pay on the loan obtained from RUS.
(Citations omitted).
Neb. Rev. Stat. § 70-625 (Cum. Supp. 1998) allows the board of directors of a public power district in Nebraska to apply for and use funds available from federal agencies for grants or loans to promote economic development and job creation projects in rural areas under the rules and regulations of the federal agency from which the funds are received. In addition, Neb. Rev. Stat. §70-625.01 (Cum. Supp. 1998) contains a number of findings by the Legislature including: 1. rural areas in the state are experiencing declines in economic activity and outmigration of residents, 2. rural economic development efforts can increase the productivity of economic resources and quality of life of rural residents, 3. funds may be available from federal agencies for economic development and job creation projects, 4. public power districts operating in rural areas are uniquely situated to know and understand the need to promote economic development and job creation projects in their service areas, and 5. it is the public policy of this state to allow public power districts to promote economic development and job creation projects in rural areas through programs administered by federal agencies such as the Rural Economic Development Loan and Grant program.
Sections 70-625 and 70-625.01 clearly authorize public power districts in Nebraska to participate in the cushion of credit and Rural Economic Development Loan and Grant programs. However, officials with the United States Department of Agriculture (USDA) have apparently taken the position that Nebraska's public power districts are disqualified from the use of federal funds for zero-interest loans under those programs on the basis of art. XIII, § 3 of the Nebraska Constitution which prohibits lending the credit of the state and the use of public funds for a private purpose[1]. You indicate that you have been advised that the position of the USDA may confuse the extension of the credit of the state with the use of funds provided by the state. You also indicate that you have been advised that it is for the Legislature to determine in the first instance what is and what is not a public purpose. Therefore, you have posed two questions to us to enable you to determine whether it is necessary for you to introduce corrective legislation or a proposed constitutional amendment during the next session of the Legislature. We will consider each of your questions in turn.
ANALYSIS
 Question No. 1. If the USDA is correct in their interpretation ofour constitution with regard to the way the REDLG program iscurrently structured, but would agree to provide the cushion ofcredit funds to a power district, with the power district agreeingto repay its own loan but not guaranteeing the performance of theultimate recipient of the loan funds, would such arrangementviolate Article XIII, Section 3 without an amendment to suchconstitutional provision?
Art. XIII, § 3 of the Nebraska Constitution provides that "[t]he credit of the state shall never be given or loaned in aid of any individual, association, or corporation . . . ." The purpose of that section is to prevent the state or any of its political subdivisions from extending the state's credit to private enterprise. Callan v. Balka, 248 Neb. 469, 536 N.W.2d 47 (1995). "It is designed to prohibit the state from acting as a surety or guarantor of the debt of another." Haman v. Marsh, 237 Neb. 699,718, 467 N.W.2d 836, 850 (1991). It applies to the State and all of its political subdivisions. State ex rel. Beck v. City of York,164 Neb. 223, 82 N.W.2d 269 (1957).
The Nebraska Supreme Court has established a three-part test for determining whether an expenditure violates art. XIII, § 3 of the Nebraska Constitution. To establish a violation of that constitutional provision, it must be shown that (1) the credit of the state(2) is given or loaned (3) in aid of any individual, association, or corporation. Callan, 248 Neb. at 476,536 N.W.2d at 51; Haman, 237 Neb. at 719, 467 N.W.2d at 850. In that context, there is a distinction between the loaning of state funds and the loaning of the state's credit. The loan of state funds places the state in the position of a creditor, and the loan of state's credit places the state in the position of debtor. Callan,248 Neb. at 476, 536 N.W.2d at 51; Haman, 237 Neb. at 719, 720,467 N.W.2d at 850. In addition, the prohibition against the pledge of the state's credit does not hinge upon whether the expenditure at issue achieves a "public purpose" when the pledge benefits a private individual, association or corporation. Haman,237 Neb. at 722, 467 N.W.2d at 852. Instead, the key focus of art. XIII, § 3 is whether the state stands as a creditor through the expenditure of its funds, or as a debtor by the extension of credit in the interest of private parties. Callan, 248 Neb. at 479,536 N.W.2d at 53; Haman, 237 Neb. at 722, 718, 467 N.W.2d at 852. (1991).
In the present instance, we understand that the focus of your inquiry is the REDLG "pass-through" loan program, whereby the Rural Utilities Service of USDA (RUS) would make a zero-interest loan to a public power district in Nebraska for rural economic development purposes. That power district would then, in turn, make a zero-interest loan of the funds from RUS to another entity that would ultimately own or undertake a private development project using the proceeds of the loan. Under such a scenario, RUS could require the public power district, as borrower, to provide it with an irrevocable letter of credit or other guarantee satisfactory to RUS that the loan would be repaid. 7 CFR, Subpart B, § 1703.29 (d). With respect to your first question to us, you wish to know, in essence, if removing the letter of credit requirement or other guarantee by the power district from the zero-interest loan process would cure any potential problems with that process under art. XIII, § 3. For the reasons discussed below, we do not believe that removing the letter of credit requirement would bring about the cure which you seek.
As noted above, the initial element of the test for a proposal under art. XIII, § 3 requires a determination as to whether the proposal involves lending the credit of the state. In regard to that determination, the key issue is whether the state or the governmental subdivision involved stands as a creditor in the process through the expenditure of its funds, or as a debtor in the process by the extension of credit in the interest of private parties. One aspect of the REDLG pass-through loan program would involve a loan from a public power district to another entity that would ultimately own or undertake a private development project using the proceeds of that loan. The power district would stand as a creditor in that transaction, since it would loan funds to the private entity. As a result, that portion of the program does not appear to involve lending the credit of the state.
On the other hand, the pass-thorough loan program, as outlined in your initial question, requires the public power district to borrow funds from RUS in order to loan those funds to the private entity. That loan from RUS to the power district would necessitate a letter of agreement and any additional legal documentation from the power district which RUS deemed appropriate, including loan agreements, promissory notes, security instruments, certifications or legal opinions. 7 CFR, Subpart B, § 1703.59 (a). In addition, the repayment terms of the loan from RUS to the public power district would have to equal the terms of the loan from the power district to the private borrower, and the power district would be required to make payments on the zero-interest loan in accordance with the legal documents executed by the power district. 7 CFR, Subpart B, §§ 1703.29 (a) and 1703.61(a). Presumably, the power district would also have to pay back its zero interest loan to RUS even if the private pass-through borrower defaulted in its duty to make payments to the power district[2].
It appears to us that the second aspect of the pass-through loan program, where the public power district borrows money from RUS and then must repay that loan, implicates the credit of the state. In that latter situation, the power district stands as a debtor through the extension of its credit, rather than as a creditor through the loan of public funds. Consequently, the pass-through loan portion of the REDLG program meets the first element of an unconstitutional extension of credit under art. XIII, § 3.
Our conclusion with respect to the initial element of the test for constitutionality under art. XIII, § 3 is supported by the circumstances and holding in State ex rel. Beck v. City of York,164 Neb. 223, 82 N.W.2d 269 (1957). The proposal at issue in that case under art. XIII, § 3 involved an agreement whereby the City Council of York, Nebraska, entered into a contract with a private cold storage and packing company to purchase certain industrial buildings by issuing revenue bonds. After purchase of the industrial buildings, the city agreed to lease them back to the private company, and the revenue bonds were to be payable out of revenues derived from the lease. As a result, as is the case in the present instance, the city proposed to go into debt and then use the proceeds from the revenue bonds creating that debt in aid of a private corporation. In addition, the city proposed the use of revenues generated from the private corporation as a means to pay off its debt under the revenue bonds. The Nebraska Supreme Court held that the proposal by the City of York violated art. XIII, § 3, and stated:
It is true that the revenue bonds are not a general liability of the city and they are not subject to payment through the exercise of the taxing power. But they do cast burdens upon the city with reference to their issuance and payment. The city and its officers are charged with the duty of fixing and collecting the rentals from which the revenue bonds are to be paid. . . . The issuance of the bonds in the name of the city for the payment of the cost of the project evidences the fact that the credit of the city has been extended. The city is the payer of the bonds and it is primarily liable for their payment. The bonds become the obligations of the city. The fact that the means of payment is limited does not make it any less so. A failure of payment is a default by the city. The constitutional prohibition does not infer that the credit of the state or its political subdivisions may be given or loaned except when a general liability exists. The prohibition clearly provides that the credit of the State may not be given or loaned to an individual, association, or corporation under any circumstances. When the State or a political subdivision thereof becomes a payer of a revenue bond or any other evidence of indebtedness which is to be used in the accomplishment of a private as distinguished from a public purpose, the credit of the State has been given or loaned contrary to Article XIII, section 3, of the Constitution. . . . The use of the city as the payer of the bonds is intended to give respectability to them because of the general acceptability of cities as a source of bond issues in financial markets. It is a loan of the credit of the city within the meaning of the constitutional prohibition.
164 Neb at 226, 227, 82 N.W.2d at 271, 272.
The second element of the test for the constitutionality of a proposal under art. XIII, § 3 involves a determination as to whether the state's credit has been "given or loaned" in connection with that proposal. In that regard, the state's credit has been "given or loaned" unless the state has received valuable consideration for the extension of its credit. Haman,237 Neb. at 722, 467 N.W.2d at 851. In the present instance, we are not aware of any valuable consideration which would be paid by a private entity to a public power district for a pass-through loan under the REDLG program[3]. Indeed, a power district may not charge interest for the use of the proceeds of a zero-interest loan provided to a private entity under the terms of the REDLG program. 7 CFR, Subpart B, § 1703.21 (a). As a result, it appears to us the pass-through loan portion of the REDLG program involves giving or loaning the credit of the state.
Finally, art. XIII, § 13 of the Nebraska Constitution prohibits giving or loaning the credit of the state "in aid of any individual, association, or corporation." From your opinion request letter, we understand that the "pass-through" loan process by a public power district in Nebraska under the REDLG program would involve the district's loan of the funds which it received from RUS to "another entity that will own or undertake a private development project using the proceeds of the loan." We believe that such a loan would clearly be "in aid of any individual, association or corporation" under the terms of art. XIII, § 13, and therefore meets the final element of the test for unconstitutionality set out above.
For the reasons discussed in the preceding paragraphs, it is our view that a zero-interest loan for economic development under the REDLG pass-through loan program would involve a violation of art. XIII, § 3 of the Nebraska Constitution, even if the public power district participating in the loan program did not provide an irrevocable letter of credit or other specific guarantee to RUS. Moreover, that result would hold true even if the expenditure at issue achieved a "public purpose." Haman, 237 Neb. at 722,467 N.W.2d at 852. Therefore, we believe an amendment to art. XIII, §3 of the Nebraska Constitution is necessary, should you wish to make such zero-interest loans permissible under applicable state law.
Question No. 2. Would further legislative declaration of thepublic purpose of such loans in addition to the findings andstatements in sec. 70-625.01 assist in allowing such funds to bemade available through public power districts?
As discussed above, we believe that a zero-interest loan by a public power district to a private entity under the REDLG pass-through loan program would involve an impermissible extension of the credit of the state under art. XIII, § 3 of the Nebraska Constitution. Under those circumstances, it does not matter if the loan to the private entity achieved a public purpose. As stated in the Haman case:
 The prohibition against the pledge of the state's credit does not hinge on whether the legislation achieves a "public purpose," when the pledge benefits a private individual, association, or corporation. The key is whether the state stands as a creditor through the expenditure of public funds or as a debtor by the extension of the state's credit to private corporations, associations, or individuals. The state is not empowered to become a surety or guarantor of another's debts.
 237 Neb. at 722, 467 N.W.2d at 852 (emphasis added) (citations omitted). Nevertheless, assuming for purposes of discussion that the zero-interest loan program at issue did pass muster under art. XIII, § 3, it would still have to be acceptable under the closely related principle of law that public funds cannot be expended for private purposes. Haman, 237 Neb. at 721, 722, 467 N.W.2d at 851. With respect to that determination, there is no hard and fast rule for ascertaining whether a proposed expenditure of public funds is for a public purpose. The Nebraska Supreme Court has indicated that "[a] public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants."Platte Valley Public Power Irrigation District v. County ofLincoln, 144 Neb. 584, 589, 14 N.W.2d 202, 205 (1944). The court has also indicated that it is for the Legislature to determine in the first instance what is and what is not a public purpose. Stateex rel. Douglas v. Thone, 204 Neb. 836, 286 N.W.2d 249 (1979). Since the Legislature's findings regarding the public purpose for an expenditure of public funds are, therefore, of significance, further legislative declaration regarding the public purpose for zero-interest loans under the REDLG program in addition to the findings and statements in § 70-625.01 might well assist in establishing a public purpose for those loans. However, that additional legislative declaration of public purpose will not cure the problems with those loans under art. XIII, § 3.
Sincerely yours,
DON STENBERG Attorney General
Dale A. Comer Assistant Attorney General
[1] The Rural Utilities Service (RUS), the agency which administers the cushion of credit and Rural Economic Development Loan and Grant programs, is an agency of the United States Department of Agriculture.
[2] 7 CFR, Subpart B, § 1703.29 (c) does provide that ". . . the borrower [power district] will be required to repay the RUS zero-interest loan in full at such time as a pass-through-loan hasbeen fully repaid to the borrower" (emphasis added), and that provision could be read obviate the public power district's obligation to pay back its loan until the power district was repaid by the private borrower. However, § 1703.29 (c) appears to go more to the time for repayment of a pass-through loan than to the power district's ultimate obligation to pay, and we assume, in light of additional CFR provisions for promissory notes and other security instruments from power districts participating in pass-through loans, that § 1703.29 (c) does not evidence any intent from RUS to totally forgive a power district of its obligation to repay a zero-interest loan in the event that a private pass-through borrower defaults.
[3] The federal regulations do allow public power districts to charge loan servicing charges, legal fees and the costs of an irrevocable letter of credit in connection with a zero-interest loan under the REDLG program. 7 CFR, Subpart B, § 1703.21 (a). However, those charges appear to involve recovery of the costs associated with the loan process rather than separate consideration for making the loan.