REQUESTED BY: Senator Jim Jones Nebraska State Legislature
In our Op. Att'y Gen. No. 00042 (December 5, 2000), we considered the constitutionality of zero-interest loans by public power districts for rural economic development under the federal Rural Economic Development Loan and Grant Program ("REDLG"). That opinion, which was prepared at your request, concerned the application of art. XIII, § 3
of the Nebraska Constitution to the loans in question. We ultimately concluded that zero-interest loans by a Nebraska public power district for economic development purposes under the REDLG program would involve a violation of art. XIII, § 3.
You have now requested a second opinion from us regarding the REDLG program. In this instance, you are concerned about the grant portion of that program which was not the subject of your previous inquiry. We understand that, depending upon our response, you are considering introduction of corrective legislation or a constitutional amendment to allow Nebraska public power districts to participate in the grants.
The federal "cushion of credit payments program," set out at7 U.S.C. § 940c and 7 C.F.R. Subpart B, §§ 1703.10 through 1703.68, is a federal program whereby Rural Electrification Act borrowers can obtain federal loans and grants for rural economic development purposes from the Rural Utilities Service ("RUS"). You describe the grant program in the following terms:
 The grant is made to the PPD [public power district], which is required to contribute 20 percent of the amount of the grant to the fund, and the PPD sets up a revolving loan program to fund eligible economic development projects.
Unlike the zero-interest loans which were the subject of our earlier opinion, it does not appear that public power districts are required to pay back amounts provided to them under the REDLG grant program. However, public power districts which do receive REDLG grant funds must follow various RUS requirements and procedures in making loans under a grant.
We will quote extensively from our Opinion No. 00042, since it has direct application to the present question you have presented. In that opinion, we began with a general discussion of art. XIII, § 3:
 Art XIII, § 3 of the Nebraska Constitution provides that "[t]he credit of the state shall never be given or loaned in aid of any individual, association, or corporation . . . ." The purpose of that section is to prevent the state or any of its political subdivisions from extending the state's credit to private enterprise. Callan v. Balka, 248 Neb. 469, 536 N.W.2d 47 (1995). "It is designed to prohibit the state from acting as a surety or guarantor of the debt of another." Haman v. Marsh, 237 Neb. 699, 718, 467 N.W.2d 836, 850 (1991). It applies to the State and all of its political subdivisions. State ex rel. Beck v. City of York, 164 Neb. 223, 82 N.W.2d 269 (1957).
The Nebraska Supreme Court has established a three-part test for determining whether an expenditure violates art. XIII, § 3 of the Nebraska Constitution. To establish a violation of that constitutional provision, it must be shown that (1) the credit of the state (2) is given or loaned (3) in aid of any individual, association, or corporation. Callan, 248 Neb. at 476, 536 N.W.2d at 51; Haman, 237 Neb. at 719,467 N.W.2d at 850. In that context, there is a distinction between the loaning of state funds and the loaning of the state's credit. The loan of state funds places the state in the position of a creditor, and the loan of state's credit places the state in the position of debtor. Callan,248 Neb. at 476, 536 N.W.2d at 51; Haman, 237 Neb. at 719, 720,467 N.W.2d at 850. In addition, the prohibition against the pledge of the state's credit does not hinge upon whether the expenditure at issue achieves a "public purpose" when the pledge benefits a private individual, association or corporation. Haman, 237 Neb. at 722, 467 N.W.2d at 852. Instead, the key focus of art. XIII, § 3 is whether the state stands as a creditor through the expenditure of its funds, or as a debtor by the extension of credit in the interest of private parties. Callan,248 Neb. at 479, 536 N.W.2d at 53; Haman, 237 Neb. at 722, 718,467 N.W.2d at 852. (1991).
Op. Att'y Gen. No. 00042 (December 5, 2000) at 3. We then discussed application of the credit of the state aspect of art. XIII, § 3 to the zero-interest loan program at issue in that opinion:
 In the present instance, we understand that the focus of your inquiry is the REDLG "pass-through" loan program, whereby the Rural Utilities Service of USDA (RUS) would make a zero-interest loan to a public power district in Nebraska for rural economic development purposes. That power district would then, in turn, make a zero-interest loan of the funds from RUS to another entity that would ultimately own or undertake a private development project using the proceeds of the loan. Under such a scenario, RUS could require the public power district, as borrower, to provide it with an irrevocable letter of credit or other guarantee satisfactory to RUS that the loan would be repaid. 7 C.F.R. Subpart B, § 1703.29(d). With respect to your first question to us, you wish to know, in essence, if removing the letter of credit requirement or other guarantee by the power district from the zero-interest loan process would cure any potential problems with that process under art. XIII, § 3. For the reasons discussed below, we do not believe that removing the letter of credit requirement would bring about the cure which you seek.
As noted above, the initial element of the test for a proposal under art XIII, § 3 requires a determination as to whether the proposal involves lending the credit of the state. In regard to that determination, the key issue is whether the state or the governmental subdivision involved stands as a creditor in the process through the expenditure of its funds, or as a debtor in the process by the extension of credit in the interest of private parties. One aspect of the REDLG pass-through loan program would involve a loan from a public power district to another entity that would ultimately own or undertake a private development project using the proceeds of that loan. The power district would stand as a creditor in that transaction, since it would loan funds to the private entity. As a result, that portion of the program does not appear to involve lending the credit of the state.
On the other hand, the pass-through loan program, as outlined in your initial question, requires the public power district to borrow funds from RUS in order to loan those funds to the private entity. That loan from RUS to the power district would necessitate a letter of agreement and any additional legal documentation from the power district which RUS deemed appropriate, including loan agreements, promissory notes, security instruments, certifications or legal opinions. 7 C.F.R. Subpart B, § 1703.59(a). In addition, the repayment terms of the loan from RUS to the public power district would have to equal the terms of the loan from the power district to the private borrower, and the power district would be required to make payments on the zero-interest loan in accordance with the legal documents executed by the power district. 7 C.F.R. Subpart B, §§ 1703.29(a) and 1703.61(a). Presumably, the power district would also have to pay back its zero interest loan to RUS even if the private pass-through borrower defaulted in its duty to make payments to the power district.
It appears to us that the second aspect of the pass-through loan program, where the public power district borrows money from RUS and then must repay that loan, implicates the credit of the state. In that latter situation, the power district stands as a debtor through the extension of its credit, rather than as a creditor through the loan of public funds. Consequently, the pass-through loan portion of the REDLG program meets the first element of an unconstitutional extension of credit under art. XIII, § 3. Op. Att'y Gen. No. 00042 (December 5, 2000) at 3-5.
In the present instance, we understand that a public power district which participates in the REDLG grant program does not borrow the funds which it uses for zero-interest loans from RUS, and that it has no obligation to repay those monies to RUS. Instead, the public power district receives grant monies from RUS which it uses, along with its own monies, to fund loans to borrowers for economic development purposes in accordance with the applicable federal regulations. Under those circumstances, it seems to us that the public power district would not stand as a debtor to RUS, and participation in the REDLG grant program would not involve lending the credit of the state under art. XIII, § 3. For that reason, we believe that participation in the REDLG grant program is permissible for a public power district under that constitutional provision.
In your opinion request letter, you also ask us to address any other issues regarding public power districts and the REDLG grant program presented by the materials you provided to us. In that regard, you gave us a copy of an opinion prepared by private counsel concerning public power district participation in the REDLG grant program. That opinion discusses the issue of whether public power districts in Nebraska currently have authority to use district monies to contribute 20% of the loan amount to borrowers under a REDLG grant.
We have reviewed the opinion prepared by private counsel which you provided to us, and we agree with the analysis stated therein. In essence, that opinion indicates that public power districts in Nebraska do have implied authority under the applicable statutes and cases to use district monies to contribute 20% of the funding for loans made under the REDLG grant program. However, that the authority for public power districts to contribute their own monies for REDLG loans is implied under the existing statutes, and you may wish to consider additional legislation to explicitly give public power districts such authority if you feel that such legislation is warranted.
Sincerely yours,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General
Approved:
______________________________ Attorney General
cc. Patrick J. O'Donnell Clerk of the Legislature