REQUESTED BY: Shawn R. Eatherton, Buffalo County Attorney
Your opinion request concerns fees received by the clerks of the district court in Nebraska for executing passport applications for the public. The issuance of passports falls within the jurisdiction of the United States Secretary of State.22 U.S.C.A. § 211a (2004). Pursuant to 22 U.S.C.A. § 214, the Secretary of State prescribes, by regulation, a fee for each passport application and a fee for executing the application. In addition, "the Secretary of State may by regulation authorize State officials or the United States Postal Service to collect and retain the execution fee for each application for a passport accepted for such officials or by that Service." Among the categories of persons authorized by the Secretary to give oaths for passport purposes is the "clerk of any State court of record or a judge or clerk of any probate court." 22 C.F.R. § 51.21
(b)(3). "When execution services are provided by an official of a state or local government or of the United States Postal Service, the fee may be retained by that entity to cover the costs of service pursuant to an appropriate agreement with the Department of State." 22 C.F.R. § 51.61 (b).
In Nebraska, a number of clerks of the district court execute passport applications and collect fees pursuant to those federal statutes and regulations. Some district court clerks personally retain the fees authorized by the Department of State for the services performed. Others do not. However, neither state nor federal statutes specifically address the disposition of the execution fees collected. Therefore, in the absence of any direct statutory guidance, a question has arisen as to whether such fees may be personally retained by the clerks of the district court. In that context, you have requested our opinion as to "the proper disposition of fees received by the Clerk of the District Court for issuing passports to the public." For purposes of your request, we assume that the passport applications and fees are accepted at the office of the clerk of the district court during normal office hours, and that public resources such as supplies or the time of other employees of that office are used in the performance of the passport application services.
At common law, public officers were not allowed to use their public office for private gain. Hulgan v. Gledhill, 207 Ga. 349,61 S.E.2d 473 (1950); Montgomery v. City of Atlanta, 162 Ga. 534,134 S.E. 152 (1926). As stated in the Hulgan case, "[t]he common-law rule, that no public agent may make a profit out of public business entrusted in his care, is the rule in this state." Hulgan at 350, 61 S.E.2d at 475. Stated another way, "no official should use his office or the money or property of his county for his own private gain." Bateman v. State, 214 Ind. 138,149, 14 N.E.2d 1007, 1011 (1938). That rule grows out of the public policy indicating that a public office is a public trust, and that a public official is a fiduciary.[1] State v. McKelvey 12 Ohio St. 2d 92, 232 N.E.2d 391 (1967). Based upon such cases, "public offices are not deemed created for the benefit of the individuals who for the time being occupy them, or for the profit, honor, or private interest of any one man, family, or class of men, but they are created for the benefit, and in the interest, of the people, and for the purpose of carrying on the operations of government." 67 C.J.S. Officers § 11 (p. 245-6). In other words, a public office "may not be used directly or indirectly for personal profit." 67 C.J.S. Officers § 204 (p. 666).
In addition to the common law rule regarding the use of a public office for private gain, the Nebraska Supreme Court has also held that public funds cannot be expended for private purposes. Haman v. Marsh, 237 Neb. 699, 721-22, 467 N.W.2d 836,851 (1991); State ex rel. Beck v. City of York, 164 Neb. 223,82 N.W.2d 269 (1957); United Community Services v. Omaha National Bank, 162 Neb. 786, 77 N.W.2d 576 (1956). While the Nebraska Constitution contains no express provision against such expenditures, the principle "is grounded on the `fundamental concepts of our constitutional system.'" State ex rel. Douglas v. Thone, 204 Neb. 836, 842, 286 N.W.2d 249, 252 (1979) (quoting State ex rel. Beck v. City of York, 164 Neb. 223, 82 N.W.2d 269
(1957)).
In the present circumstances, we believe that personal retention of the fees collected for the execution of passport applications by district court clerks implicates the use of a public office for private gain. Those clerks are only authorized and enabled to perform such services and collect the fees by virtue of their office, i.e., if they were not clerks of the district court, they could not execute passport applications. Moreover, since passport applications are generally processed during normal office hours, personal retention of the fees at issue potentially involves the use of public resources for private purposes. Therefore, in the absence of any statutory direction regarding this issue, it appears to us that personal retention of the passport application fees is impermissible under the principles set out above. Such fees should be paid over to the county.
We are aware of State ex rel. Douglas County v. Smith,102 Neb. 82, 165 N.W. 896 (1917), where the Nebraska Supreme Court held that Nebraska statutes did not require the Clerk of the Douglas County District Court to account to the county for naturalization fees which he had collected and retained under authority of federal statute. However, we believe that our supreme court would likely reach a different conclusion regarding those issues today based upon the law discussed above. Similarly, to the extent that our Op. Att'y Gen. No. 94091 (November 21, 1994) suggests a different conclusion than that stated herein, our review of the principles regarding the use of a public office for private gain and the use of public property for private purposes leads us to a different result in this instance.
Sincerely,
 JON BRUNING Attorney General
 Matt McNair Chief Deputy Attorney General
Approved:
 ______________________________ Attorney General
[1] In general terms, public policy in Nebraska does not favor the use of a public office for personal financial gain as evidenced by Neb. Rev. Stat. § 49-14,101.01 (2004), where the Legislature prohibited the use of a public office for personal gain under certain circumstances as a part of the Nebraska Political Accountability and Disclosure Act.